[No. C055155. Third Dist. Feb. 1, 2008.]

In re J.G. on Habeas Corpus.

**COUNSEL**

Michael Satris, under appointment by the Court of Appeal, for Petitioner J.G.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Yun Hwa Harper, Deputy Attorney General, for Respondent the People.

**OPINION**

**CANTIL-SAKAUYE, J.**—Petitioner J.G. is in the custody of respondent Secretary of the California Department of Corrections and Rehabilitation (CDCR), serving multiple indeterminate life sentences in an institution located outside of California as a participant in the federal witness protection program. Between 1967 and 1982, separate California juries convicted petitioner of seven counts of murder (Pen. Code, § 187)[1] and three counts of conspiracy to commit murder (§§ 182, 187), among other crimes.

Petitioner filed a petition for writ of habeas corpus in superior court challenging his classification as a "multijurisdiction prisoner" and denial of his request to appear in person at his "lifer's hearing" before the Board of Parole Hearings (Board).[2] Petitioner alleged that California Code of Regulations, title 15, section 2367, subdivision (d)(1) and (2) (Regulation 2367(d)(1) and (2)) and respondent's actions unlawfully deprived him of rights afforded California prisoners under sections 2911, 3041.5, subdivision (a)(2), and 3041.7. The superior court denied the petition, ruling that (1) section 3041.5 says that prisoners "have a right to be present" but not the "right to appear in person"; and (2) petitioner agreed to federal jurisdiction and therefore became, "by definition, a multi-jurisdictional prisoner."

Petitioner filed a new petition for writ of habeas corpus in this court, raising the same issues. (See *In re Hochberg* (1970) 2 Cal.3d 870, 874, fn. 2 [87 Cal.Rptr. 681, 471 P.2d 1] (*Hochberg*).) He argues that respondent's policies, "which are contrary to State Statute, [place him] at a disadvantage at his parole hearing[] [b]y depriving Petitioner [of] the right to advance more favorable mitigating circumstances, such as: (1) To see the person who is now 42 years in prison and a 66 years [*sic*] old man; (2) To be able to judge the remorse of the person standing before them; (3) To get the feel and character of this person." (Emphasis omitted.) We issued an order to show cause and appointed counsel to represent petitioner.

We requested supplemental briefing, and in the first round, respondent CDCR indicated that it would grant, "the relief [petitioner] seeks" and asked us to dismiss the petition as moot. We requested additional briefing from respondent on that issue.

---

[1] Hereafter, undesignated statutory references are to the Penal Code.

[2] The Board is an arm of respondent CDCR. (*In re Dannenberg* (2005) 34 Cal.4th 1061, 1078 [23 Cal.Rptr.3d 417, 104 P.3d 783] (*Dannenberg*); § 3040.)

Having independently reviewed the record and briefs filed by the parties (*Hochberg, supra,* 2 Cal.3d at p. 874, fn. 2), we reject respondent's interpretation that petitioner's right to be present (§ 3041.5) and right to personally appear at his parole hearing (§ 2911, subd. (e)) are satisfied by a telephonic appearance. We conclude that (1) the substantive issues raised in the petition are not moot; (2) the plain language of section 3041.5, subdivision (a)(2) shows that petitioner has the statutory right to appear in person at his "lifer's hearing"; (3) to the extent that Regulation 2367(d)(1) and (2) bar a prisoner, like petitioner, from appearing in person at his or her parole hearing, it is void; and (4) the CDCR violated petitioner's right to due process by failing to honor its specific agreement that petitioner's "hearings for parole consideration and determination of sentence [would] be conducted on the same basis as if [he] were in a California institution." We therefore grant the petition for writ of habeas corpus and direct respondent to permit petitioner to appear in person at his parole hearing.

## DISCUSSION

## I.

### *The Petition Is Not Moot*

██ "It is well settled that the duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it [citation]." (*National Assn. of Wine Bottlers v. Paul* (1969) 268 Cal.App.2d 741, 746 [74 Cal.Rptr. 303].) Respondent contends that no actual controversy exists in this case "because J.G. will be able to appear physically before the Board for his next parole consideration hearing." We conclude that broader policy considerations justify our review of the substantive issues raised in J.G.'s petition.

Petitioner and respondent agree that an appellate court may resolve controversies that are technically moot if the issues are of substantial and continuing public interest. (*DeRonde v. Regents of University of California* (1981) 28 Cal.3d 875, 880 [172 Cal.Rptr. 677, 625 P.2d 220].) Although courts generally avoid issuing advisory opinions on abstract propositions of law, they "should *not* avoid the resolution of important and well litigated controversies arising from situations which are 'capable of repetition, yet evading review.' " (*In re William M.* (1970) 3 Cal.3d 16, 23, fn. 14 [89 Cal.Rptr. 33, 473 P.2d 737], italics added, quoting *Moore v. Ogilvie* (1969) 394 U.S. 814, 816 [23 L.Ed.2d 1, 4, 89 S.Ct. 1493].)

We conclude that J.G.'s petition raises issues of continuing interest to the public, the federal government, and the state government at a time when some California prisoners serve their sentences outside state boundaries. It is of substantial and continuing interest to prisoners who are serving California sentences of life with the possibility of parole who, like petitioner, are housed in federal custody under the federal witness protection program. Respondent states that there are at present 20 individuals in this category. We reject respondent's suggestion that they form a minute class of individuals not entitled to resolution of the broader issues raised by J.G.'s petition. As we shall explain, life prisoners who have not received a parole date have a limited liberty interest. (See *In re Sturm* (1974) 11 Cal.3d 258 [113 Cal.Rptr. 361, 521 P.2d 97] (*Sturm*); *In re Rosenkrantz* (2002) 29 Cal.4th 616 [128 Cal.Rptr.2d 104, 59 P.3d 174] (*Rosenkrantz*).) Precisely because the rights of these prisoners are limited, it is important that we clearly articulate the rights they do possess.

Courts also hesitate to consider a case moot where a party voluntarily ceases an allegedly illegal practice but is free to resume it at any time. (See, e.g., *Kidd v. State of California* (1998) 62 Cal.App.4th 386, 397 [72 Cal.Rptr.2d 758].) As one court observed, a "unilateral decision" to change "is also unilaterally rescindable." (*Cook v. Craig* (1976) 55 Cal.App.3d 773, 780 [127 Cal.Rptr. 712].) In supplemental briefing, respondent initially filed with this court a vaguely worded assurance that it would "be providing the relief that [J.G.] seeks" and that it would "make arrangements" for him to be personally and physically present "at his next parole consideration hearing." Respondent, at this court's request for clarification, followed up with a more carefully worded promise that "absent any changes in the law the Board will continue to facilitate J.G.'s physical appearance, without declaring future actions in perpetuity that may conflict with changing and evolving laws." In spite of respondent's carefully worded assurances, based on this record, we conclude that the issues raised by J.G. are " 'capable of repetition, yet evading review' " by him or others who are similarly situated. (*In re William M., supra*, 3 Cal.3d at p. 23, fn. 14.) We shall resolve them.

## II.

### *Petitioner's Liberty Interest*

■ Prisoners do not possess the same liberty interest as ordinary citizens. (See *Morrissey v. Brewer* (1972) 408 U.S. 471, 480 [33 L.Ed.2d 484, 494, 92 S.Ct. 2593].) Courts also differentiate between the liberty interest of persons on parole and those awaiting release on parole. Revocation of parole deprives the individual "of the conditional liberty properly dependent on observance of special parole restrictions." (*Ibid.*) In that context, due process

includes the right of the parolee to appear in person at his or her parole revocation hearing. (*Id.* at pp. 488–489 [33 L.Ed.2d at pp. 498–499].)

██ In contrast, "parole release decisions concern an inmate's mere anticipation or hope of freedom . . . ." (*Sturm, supra,* 11 Cal.3d at p. 266, citation omitted; accord, *Rosenkrantz, supra,* 29 Cal.4th at p. 655.) In other words, "[a]n incarcerated individual for whom a parole date has not been set possesses less of an expectation of liberty than one for whom a release date previously has been established by the Board." (*Rosenkrantz, supra,* at p. 656.) Although a prisoner like petitioner, who has not been granted a parole release date, has a "mere anticipation or hope of freedom" (*Sturm, supra,* at p. 266), the due process requirements of the California Constitution impose limitations on the Board's discretionary authority in those circumstances. (*Rosenkrantz, supra,* at p. 655, citing *Sturm, supra,* at p. 273 [Board must provide a definitive written statement of its reasons for denying parole]; *In re Minnis* (1972) 7 Cal.3d 639, 645–646 [102 Cal.Rptr. 749, 498 P.2d 997] [Board must consider all relevant factors]; *In re Ramirez* (2001) 94 Cal.App.4th 549, 569–572 [114 Cal.Rptr.2d 381] [same], disapproved in part on another ground in *Dannenberg, supra,* 34 Cal.4th at p. 1100.) At minimum, these decisions "evince[] a limited cognizance of rights of parole applicants to be free from an arbitrary parole decision . . . ." (*Sturm, supra,* at p. 268.)

## III.

### *Petitioner's Statutory Right to Appear in Person*

██ We need not delineate further the scope of petitioner's constitutional protections because the right he asserts is provided by California statutory law. There is no dispute that petitioner is entitled to a parole suitability hearing under section 3041.7 and that section 3041.5 applies to petitioner's hearing. Section 3041, subdivision (a) directs the Board to "meet with [the] inmate" when it prepares to set "a parole release date as provided in Section 3041.5." Section 3041.7 reads, "At any hearing for the purpose of setting, postponing, or rescinding a parole release date of a prisoner under a life sentence, the prisoner shall be entitled to be represented by counsel and the provisions of Section 3041.5 shall apply. . . ." Section 3041.5, subdivision (a)(2) expressly states that "[t]he prisoner shall be permitted to be present . . ." at "all hearings for the purpose of reviewing a prisoner's parole suitability . . . ."

Section 2911 concerns state prison inmates who, like petitioner, are transferred to federal authorities pursuant to contract. Subdivision (e) of section 2911 provides: "(e) The Board of [Parole Hearings], and the panels and members thereof, may meet at the federal facility where an inmate is confined pursuant to this section or enter into cooperative arrangements with corresponding federal agencies or officials, as necessary to carry out the term-fixing and parole functions. *Nothing in this subdivision shall be deemed to waive an inmate's right to personally appear before the Board of [Parole Hearings].*" (Italics added.)

Respondent initially acknowledged in what appeared to be a concession on the dispositive question of statutory interpretation that "the statute merely states that [petitioner] has the right to make a personal appearance." However, in supplemental briefing, respondent maintains that "it is a reasonable interp[re]tation that the plain language of . . . sections 3041.5 and 2911 does not entitle an inmate to be physically present at his parole consideration hearings." We disagree.

■ " 'In construing a statute, " 'we strive to ascertain and effectuate the Legislature's intent.' [Citations.] Because statutory language 'generally provide[s] the most reliable indicator' of that intent [citations], we turn to the words themselves, giving them their 'usual and ordinary meanings' and construing them in context . . . .' [Citation.] "If the language contains no ambiguity, we presume the Legislature meant what it said, and the plain meaning of the statute governs." [Citation.]' " (*Dannenberg, supra*, 34 Cal.4th at p. 1081.)

There is no ambiguity in the phrases "shall meet with" (§ 3041, subd. (a)), "to be present" (§ 3041.5), or to "personally appear" (§ 2911, subd. (e)). Merriam-Webster's Collegiate Dictionary (11th ed. 2006) defines the verb "meet" as meaning "to come into the presence of" or "to come together with esp. at a particular time or place." (*Id.* at p. 772, col. 1.) The definition of the adjective "present" includes "being in view or at hand." (*Id.* at p. 982, col. 1.) "Personal" in this context means "carried on between individuals directly." (*Id.* at p. 924, col. 2.) Nothing in these definitions suggests that the Legislature intended that the word "present" in section 3041.5 or the word "personally" in section 2911 to mean anything other than physical presence.

## IV.

### *CDCR's Regulation Is Void*

Respondent adopted a series of regulations that set forth the rights afforded life prisoners at Board hearings to determine parole release dates

under sections 3041 and 3041.5. (See notes foll. Cal. Code Regs., tit. 15, §§ 2000, 2246, 2280, 2367.) A prisoner *located in California* has "the right to be present at the hearing, to speak on his own behalf, and to ask and answer questions." (Cal. Code Regs., tit. 15, § 2247; see *id.*, § 2245.) "Prisoners located outside California shall have the rights specified in 2367." (Cal. Code Regs., tit. 15, § 2245.) California Code of Regulations, title 15, section 2367 lists the rights of multijurisdiction prisoners located outside California.[3] With respect to hearings, "[t]he prisoner has a right to either a telephone hearing conducted by the board at the central office calendar through the use of such telephone equipment as will permit him to participate in the entire proceeding or a hearing conducted in the other jurisdiction by officials of that jurisdiction." (Regulation 2367(d)(1).)[4]

Respondent argues that because petitioner is a multijurisdiction prisoner, Regulation 2367(d)(1) provides sufficient authority for denying his request to appear in person at his next parole hearing. However, respondent sees no conflict between section 3041.5 and the regulation. Respondent construes the language in sections 3041.5 and 2911, subdivision (e)—"personally appear" and "present"—as requiring the prisoner be afforded the opportunity to participate fully and completely in the hearing. Respondent maintains that this requirement is satisfied by a telephonic hearing in which petitioner J.G. is able to appear at his parole hearing, ask and answer questions, and speak on his own behalf. We disagree with respondent's construction of the statutes.

■ "Administrative agencies have only the powers conferred on them, either expressly or impliedly, by the Constitution or by statute, and administrative actions exceeding those powers are void. [Citation.] To be valid, administrative action must be within the scope of authority conferred by the enabling statutes. [Citation.] We recognize that the courts usually give great weight to the interpretation of an enabling statute by officials charged with its administration, including their interpretation of the authority vested in them *to implement and carry out its provisions.* [Citation.] But regardless of the force of administrative construction, final responsibility for interpretation of

---

[3] California Code of Regulations, title 15, section 2000, subdivision (b)(70) defines "Multijurisdiction Prisoner" as "[a]ny federal contract . . . prisoner." Petitioner admits that he is "serving his indeterminate life terms in a federal institution pursuant to a federal contract authorized by section 2911."

[4] Regulation 2367(d)(2) provides that "[t]he prisoner shall receive a telephone hearing unless the hearing is being conducted to determine whether the individual has violated a condition of parole or engaged in conduct which may result in the rescission or postponement of a parole date . . . ."

the law rests with courts. If the court determines that a challenged administrative action was not authorized by or is inconsistent with acts of the Legislature, that action is void. [Citation.]" (*Terhune v. Superior Court* (1998) 65 Cal.App.4th 864, 872–873 [76 Cal.Rptr.2d 841].) "The question before the reviewing court is not the wisdom of the agency's rule or policy, but whether it would alter or amend the statute." (*In re Stanley* (1976) 54 Cal.App.3d 1030, 1036 [126 Cal.Rptr. 524].) ■ We conclude that Regulation 2367(d)(1) significantly alters section 3041.5 by eliminating the statutory right of multijurisdiction prisoners to personally appear at their parole release hearings.

Respondent asserts that a telephone appearance under Regulation 2367(d)(1) "enables [petitioner] to fully participate in the suitability proceedings on the same basis as if [he] were in . . . California." We disagree that the ability to "fully participate" by telephone is equivalent to the personal appearance authorized by section 3041.5.

Regulation 2367(d)(1) denies the prisoner the ability to communicate with Board members face to face, a disadvantage where "a parole release proceeding is *an attempt to predict by subjective analysis* whether the inmate will be able to live in society without committing additional antisocial acts . . . ." (*Sturm, supra*, 11 Cal.3d at p. 266, italics added.) Body language may be as important to the Board as spoken language in assessing signs of remorse and the effect of age—two criteria used to determine the prisoner's suitability for parole. (Cal. Code Regs., tit. 15, § 2281, subd. (d)(3), (7).)[5]

■ The importance of witnesses' personal appearance is underscored by the rule of conflicting evidence, the well-established principle of policy and appellate practice. Where the evidence is in conflict, the appellate court defers to the determination of the jury or court as finder of fact. (See, e.g., *Lenk v. Total-Western, Inc.* (2001) 89 Cal.App.4th 959, 968 [108 Cal.Rptr.2d 34]; *People v. Gunn* (1959) 170 Cal.App.2d 234, 238 [338 P.2d 592].) "The justification commonly advanced for the rule is that the appellate court has no opportunity to observe the *appearance and general bearing of the witnesses*, and is thus deprived of an important aid in the determination of the value and weight to be given the testimony. 'The cold record cannot give the look or manner of the witnesses; their hesitations, their doubts, their variations of language, their precipitancy, their calmness or consideration. A witness may

---

[5] California Code of Regulations, title 15, section 2281, subdivision (d)(3) reads: "Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or the prisoner has given indications that he understands the nature and magnitude of the offense."

California Code of Regulations, title 15, section 2281, subdivision (d)(7) provides: "Age. The prisoner's present age reduces the probability of recidivism."

convince all who hear him testify that he is disingenuous and untruthful, and yet his testimony, when read, may convey a most favorable impression.' " (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 360, p. 411, quoting *Maslow v. Maslow* (1953) 117 Cal.App.2d 237, 243 [255 P.2d 65], disapproved on another ground in *Liodas v. Sahadi* (1977) 19 Cal.3d 278, 287, fn. 3 [137 Cal.Rptr. 635, 562 P.2d 316].)

■ Because Regulation 2367(d)(1) and (2) exceeds the scope of authority conferred by sections 3041 and 3041.5, we conclude it is void as applied to J.G. and other prisoners who are similarly situated. (*Terhune, supra*, 65 Cal.App.4th at pp. 872–873.) Those include prisoners serving California sentences of life with the possibility of parole who are presently housed in a penal institution outside of California under the federal witness protection program, a federal contract authorized by section 2911.

## V.

### *The Plain Language of Section 2911, Subdivision (e) Recognizes the Right to Personally Appear*

At oral argument, the Attorney General forcefully argued that section 3041.5 has been amended some eight times when Regulation 2367(d)(1) [authorizing telephone hearings] was in effect; that the Legislature has not amended section 3041.5 to disavow the Board's construction of the statute, so that we should assume that the Legislature has endorsed the interpretation of the statute adopted by the Board by its enactment of Regulation 2367(d)(1).

The Attorney General did not brief this argument despite having four opportunities to do so in the informal response, the return, respondent's supplement to return, and in the response to court's request for clarification and briefing. It is improper to make a legal argument for the first time at oral argument, and we could reject the argument out of hand on that basis. (*Opdyk v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1830 [41 Cal.Rptr.2d 263].) However, because this case involves procedural issues of general application in the state, we shall address the argument on the merits and reject it.

The rule of law relied on by the Attorney General in fact exists. Thus, in *Coca-Cola Co. v. State Bd. of Equalization* (1945) 25 Cal.2d 918 [156 P.2d 1], our Supreme Court had to determine whether to apply a rule adopted by the Board of Equalization related to the taxation of containers. In deciding to apply the rule, the court said, "The Legislature has frequently amended the Retail Sales Tax Act, including section 2, which, among other things, defines 'retail sale' and 'sale at retail.' [Citations.] It may be presumed that these

amendments were made with full knowledge of the construction which had been placed upon the statute by the Board of Equalization, yet there was no modification of the legislation which would require a contrary interpretation. This is a factor that may be considered in determining the meaning of the terms intended by the Legislature. [Citations.]" (*Id.* at p. 922.)

This principle of law in *Coca-Cola* has been followed in the following cases: *Cooper v. Swoap* (1974) 11 Cal.3d 856, 868 [115 Cal.Rptr. 1, 524 P.2d 97]; *Industrial Welfare Com. v. Superior Court* (1980) 27 Cal.3d 690, 708–709 [166 Cal.Rptr. 331, 613 P.2d 579]; *Mission Pak Co. v. State Bd. of Equalization* (1972) 23 Cal.App.3d 120, 125–126 [100 Cal.Rptr. 69]; *Henry's Restaurants of Pomona, Inc. v. State Bd. of Equalization* (1973) 30 Cal.App.3d 1009, 1021 [106 Cal.Rptr. 867]; *Action Trailer Sales, Inc. v. State Bd. of Equalization* (1975) 54 Cal.App.3d 125, 133–134 [126 Cal.Rptr. 339]; *Anderson v. San Francisco Rent Stabilization & Arbitration Bd.* (1987) 192 Cal.App.3d 1336, 1343 [237 Cal.Rptr. 894].

Regulation 2367(d)(1) (authorizing telephone hearings) was first adopted by the Board on October 27, 1977. A statute cited for authorization of the regulation is section 3041.5, dealing with parole hearings. As the Attorney General contended at oral argument, section 3041.5 was amended eight different times since regulation 2367(d)(1) was first adopted in 1977. None of these amendments expresses any displeasure with the regulation. An inference to be drawn is that the Legislature agrees with the Board's construction of section 3041.5.

However, in adopting Regulation 2367(d)(1), the Board did *not* cite as authority section 2911, subdivision (e), which provides in pertinent part, "Nothing in this subdivision shall be deemed to waive an inmate's right to personally appear before the Board of [Parole Hearings]." We do not see how the Legislature's acquiescence in Regulation 2367(d)(1) indicates that the regulation is a fair interpretation of a statute (§ 2911, subd. (e)) that was not thought to be a basis for the regulation. Regulation 2367(d)(1) simply did not interpret section 2911, subdivision (e). We therefore conclude that the Attorney General's argument does not affect our interpretation of section 2911, subdivision (e). In our view, the plain language of that statute recognizes that an out-of-state prisoner, who is subject to section 2911, has a right to appear "personally" (i.e., in person) before the Board.

# VI.

## *The Federal Contract Preserves Petitioner's Right to Appear in Person*

We already rejected respondent's argument that petitioner is not entitled to appear in person at his parole release hearing by virtue of his classification as a multijurisdiction prisoner under a federal contract authorized by section 2911. That contract itself provides additional grounds for granting the petition.

■ Section 2911 authorizes respondent to contract with federal agencies for the confinement of persons convicted of crimes in California. (§ 2911, subd. (a).) As we have noted, subdivision (e) of section 2911 provides: "The Board of [Parole Hearings], and the panels and members thereof, may meet at the federal facility where an inmate is confined pursuant to this section or enter into cooperative arrangements with corresponding federal agencies or officials, as necessary to carry out the term-fixing and parole functions. *Nothing in this subdivision shall be deemed to waive an inmate's right to personally appear before the Board of [Parole Hearings].*" (Italics added.) As we explained, Regulation 2367(d)(1) contradicts the clear intent of the Legislature in section 2911 to preserve the right of a prisoner to appear in person at his or her parole hearings, regardless of where the prisoner is housed.

The express language of petitioner's agreement to be housed in a federal institution also demonstrates that petitioner did not waive his right to appear in person. The last paragraph of the agreement states: "I understand that my hearings for parole consideration and determination of sentence will be conducted on the same basis as if I were in a California institution." California Code of Regulations, title 15, section 2247, applicable to prisoners located in California, provides that "[a] prisoner has the right to be present at the hearing, to speak on his own behalf, and to ask and answer questions." That is what petitioner wishes to do.

We conclude respondent violated petitioner's right of due process by arbitrarily denying his right to appear in person which was preserved under section 2911 and the express terms of his contract. (*Sturm, supra,* 11 Cal.3d at pp. 267, 273.)

## DISPOSITION

The petition for writ of habeas corpus is granted. California Code of Regulations, title 15, section 2367, subdivision (d)(1), (2) is void as to petitioner and others who are similarly situated, that is, prisoners serving California sentences of life with the possibility of parole who are presently housed in a penal institution outside of California under the federal witness protection program, a federal contract authorized by section 2911. Respondent is directed to permit petitioner to appear in person at his parole hearing, whether by having the Board meet with petitioner at the federal institution where he is confined, arranging with corresponding federal officials to meet with petitioner and carry out the Board's term-fixing and parole functions, or otherwise designating a time and place in California where petitioner may be produced by federal authorities to meet with the Board for his parole hearing.

Sims, Acting P. J., and Morrison, J., concurred.