Filed 12/18/14 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| ADRIANA GIANTURCO SALTONSTALL et al., | |
| Plaintiffs and Appellants, | C077031 |
| v. | (Super. Ct. No. 34201480001840) |
| CITY OF SACRAMENTO, | ORDER MODIFYING OPINION |
| Defendant and Respondent; | [NO CHANGE IN JUDGMENT] |
| SACRAMENTO BASKETBALL HOLDINGS, LLC, | |
| Real Party in Interest and Respondent. | |

THE COURT:

The opinion filed November 20, 2014, in the above cause is modified in the following respect:

On page 2, change the editorial information to read:

PIONEER LAW GROUP, Andrea A. Matarazzo and Jeffrey K. Dorso for Real Party in Interest and Respondent.

1

This modification does not change the judgment.



          NICHOLSON          ,Acting P.J.




          MAURO          , J.




          HOCH          , J.

Filed 11/20/14 (unmodified version)

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| ADRIANA GIANTURCO SALTONSTALL et al., | |
| Plaintiffs and Appellants, | C077031 |
| v. | (Super. Ct. No. 34201480001840) |
| CITY OF SACRAMENTO, | |
| Defendant and Respondent; | |
| SACRAMENTO BASKETBALL HOLDINGS, LLC, | |
| Real Party in Interest and Respondent. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Timothy M. Frawley, Judge. Affirmed.

The Smith Firm and Kelly T. Smith for Plaintiffs and Appellants.

James C. Sanchez, Brett M. Witter, Jeffrey Heeren; MEYERS, NAVE, RIBACK, SILVER & WILSON, Amrit S. Kulkarni, Julia L. Bond and Shaye Diveley for Defendant and Respondent.

1

PIONEER LAW GROUP, Andrea A. Matarazzo and Jeffrey K. Sorso for Real Party in Interest and Respondent.

The Sacramento Kings, a professional basketball team, have played at the Sleep Train Arena (formerly called Arco Arena) since 1988. In January 2013, the team's then owners entered into a tentative agreement to sell the Sacramento Kings to a group of investors in Seattle, Washington. Seeking to keep the team in Sacramento, the City of Sacramento (City) partnered with Sacramento Basketball Holdings LLC to build a new entertainment and sports center in downtown Sacramento at the site of a shopping mall with declining occupancy rates. In May 2013, the Board of Governors for the National Basketball Association (NBA) rejected an application to sell the team and move it to Seattle, and approved the sale of the team to Sacramento Basketball Holdings. The NBA's board of governors also reserved the right to acquire the Sacramento Kings and relocate the team to another city if a new arena in Sacramento does not open by 2017.

To meet the NBA's deadline, the City and Sacramento Basketball Holdings developed a schedule that targets October 2016 as the opening date for the downtown arena. To facilitate timely completion of the project, the Legislature added section 21168.6.6 to the Public Resources Code.[1] Section 21168.6.6 modifies -- only for construction of the downtown arena in Sacramento -- several deadlines for review of the project under the California Environmental Quality Act (CEQA) (§ 21050 et seq.). Other than deadlines for review, section 21168.6.6 does not substantively modify CEQA as it applies to the downtown arena project.

---

[1] Undesignated statutory references are to the Public Resources Code.

2

Adriana Gianturco Saltonstall and 11 other individuals sued to challenge section 21168.6.6's constitutionality as well as the project's compliance with CEQA requirements.[2] Saltonstall moved for a preliminary injunction on grounds of imminent harm to the public caused by the demolition of the shopping mall and construction of the downtown arena. The trial court denied the motion for a preliminary injunction.

Saltonstall appeals the denial of the preliminary injunction on two grounds. First, she argues section 21168.6.6 represents an unconstitutional intrusion of the legislative branch on the core function of the courts. Second, Saltonstall contends the preliminary injunction should have been granted because section 21168.6.6 "harms [the public] and the environment," but not the respondents.[3] The City counters that the appeal is moot because we cannot resolve the appeal before the trial court decides Saltonstall's action on the merits. The City also requests monetary sanctions for an appeal it characterizes as frivolous, taken for purposes of delay, and to harass the respondents.[4]

Based on Saltonstall's contention that the time limits imposed by section 21168.6.6 are too short to allow any meaningful judicial scrutiny, we exercise our

---

[2]   The other 11 petitioners are William Reany, Jeanie Keltner, Delphine Cathcart, Bob Blymyer, Helen Maggie O'Mara, J. Bolton Phillips, Kevin Coyle, Karen Redman, Ronald H. Emslie, Christine Hansen, and Sarah E. Foster. We refer to petitioners collectively as Saltonstall. A separate lawsuit challenging the downtown arena project was filed by the Sacramento Coalition for Shared Prosperity. The trial court consolidated the two actions. Sacramento Coalition for Shared Prosperity is not a party in this appeal from the denial of the preliminary injunction.

[3]   On appeal, Saltonstall abandons her argument made in the trial court that the ongoing construction project does not meet the definition of the project for which section 21168.6.6 is intended to apply.

[4]   Although joining in defending the trial court's decision to deny a preliminary injunction, Sacramento Basketball Holdings neither argues mootness nor requests the imposition of monetary sanctions on appeal.

discretion to consider the constitutional challenge on grounds the issue might otherwise evade judicial review despite the potential for repetition. On the merits, we reject Saltonstall's constitutional challenge because section 21168.6.6 does not materially impair a core function of the courts. Moreover, CEQA review does not implicate any constitutionally granted right. Consequently, even if the deadlines set forth in section 21168.6.6 are short, they are not unconstitutional. We reject Saltonstall's argument that the City and Sacramento Basketball Holdings will not be harmed by a preliminary injunction. Saltonstall mistakenly assumes respondents have the burden of showing a preliminary injunction will cause harm to them. Instead, it is Saltonstall who bore but failed to meet the burden to show the necessity for a preliminary injunction. We deny the City's request for attorney fees because the City failed to comply with the California Rules of Court rule applicable to motions for sanctions on appeal. Accordingly, we affirm the trial court's order denying the preliminary injunction and deny the City's request for monetary sanctions on appeal.

FACTUAL AND PROCEDURAL HISTORY

### *The Downtown Arena Project*

The downtown arena project involves demolition of a part of the Downtown Plaza, a pedestrian-only shopping mall in Sacramento bounded by J Street to the north, L Street to the south, 7th Street to the east, and 4th Street to the west. In place of a portion of the shopping mall, the City and Sacramento Basketball Holdings plan to construct a 17,500-seat entertainment and sports center along with approximately 1.5 million square feet of related retail, commercial, office, and residential development.[5] The project includes six

---

5    For ease of reference and consistent with section 21168.6.6, subdivision (a)(3), we refer to the project as the downtown arena project.

4

off-site digital billboards on City-owned property as well as the transfer of ownership of certain other City-owned properties to Sacramento Basketball Holdings.

The downtown arena has been designed to meet the requirements of the U.S. Green Building Council's Leadership in Energy and Environmental Design (LEED) Gold certification. Among the downtown arena's environmental design goals are: carbon neutrality, reduction of per-attendee-vehicle miles travelled, and reduced greenhouse gas emissions. Urban design goals include plans to spark redevelopment of the downtown area with an influx of basketball game and concert event attendees to the arena.

The demolition and construction schedule targets the opening date for the downtown arena for October 2016 because the NBA reserved the right to acquire the Sacramento Kings and relocate the team to another city if a new arena is not open by 2017.

### Section 21168.6.6

On September 27, 2013, Governor Brown signed Senate Bill 743, which, among other things, added section 21168.6.6 to the Public Resources Code. (Stats. 2013, ch. 386, § 7.) Section 16 of Senate Bill 743 "declares that a special law is necessary and that a general law cannot be made applicable within the meaning of Section 16 of Article IV of the California Constitution because of the unique need for the development of an entertainment and sports center project in the City of Sacramento in an expeditious manner." Section 21168.6.6 modifies several CEQA deadlines specifically for the project to build the downtown arena in Sacramento.

Section 21168.6.6 does not change CEQA's standards for required content of the environmental impact report (EIR) or approval for the project. Instead, section 21168.6.6 provides an accelerated timeline of events along with provisions intended to facilitate expedited CEQA review such as: preparation of documents in electronic format, making

5

the administrative record readily accessible to the public in electronic format, mediation of issues among the parties, and a series of informational workshops to be held by the City.**6**

---

**6**    For CEQA review of the downtown arena project, subdivisions (e) through (f) of section 21168.6.6 impose the following deadlines and requirements:

"(e)(3) Within 10 days after the release of the draft environmental impact report, the lead agency shall conduct an informational workshop to inform the public of the key analyses and conclusions of that report.

"(4) Within 10 days before the close of the public comment period, the lead agency shall hold a public hearing to receive testimony on the draft environmental impact report. A transcript of the hearing shall be included as an appendix to the final environmental impact report.

"(5) . . . Within five days following the close of the public comment period, a commenter on the draft environmental impact report may submit to the lead agency a written request for nonbinding mediation. The lead agency and applicant shall participate in nonbinding mediation with all commenters who submitted timely comments on the draft environmental impact report and who requested the mediation. Mediation conducted pursuant to this paragraph shall end no later than 35 days after the close of the public comment period. [¶] . . . [¶]

"(6) The lead agency need not consider written comments submitted after the close of the public comment period, unless those comments address [new issues raised by the lead agency in response to comments, new information coming to light after release of the draft environmental impact report, project changes made after the comment period, documents released by the lead agency concerning mitigation measures after the close of the comment period, or other new information that was not known during the public comment period]. [¶] . . . [¶]

"(7) The lead agency shall file the notice required by subdivision (a) of Section 21152 within five days after the last initial project approval.

"(f)(1) The lead agency shall prepare and certify the record of the proceedings in accordance with this subdivision and in accordance with Rule 3.1365 of the California Rules of Court. . . .

In addition to imposing accelerated deadlines on the City as the lead agency for the project, subdivision (d) of section 21168.6.6 requires the Judicial Council, by July 1,

---

"(2) No later than three business days following the date of the release of the draft environmental impact report, the lead agency shall make available to the public in a readily accessible electronic format the draft environmental impact report and all other documents submitted to or relied on by the lead agency in the preparation of the draft environmental impact report.  A document prepared by the lead agency or submitted by the applicant after the date of the release of the draft environmental impact report that is a part of the record of the proceedings shall be made available to the public in a readily accessible electronic format within five business days after the document is prepared or received by the lead agency.

"(3) Notwithstanding paragraph (2), documents submitted to or relied on by the lead agency that were not prepared specifically for the project and are copyright protected are not required to be made readily accessible in an electronic format. . . .

"(4) The lead agency shall encourage written comments on the project to be submitted in a readily accessible electronic format, and shall make any such comment available to the public in a readily accessible electronic format within five days of its receipt.

"(5) Within seven business days after the receipt of any comment that is not in an electronic format, the lead agency shall convert that comment into a readily accessible electronic format and make it available to the public in that format.

"(6) The lead agency shall indicate in the record of the proceedings comments received that were not considered by the lead agency pursuant to paragraph (6) of subdivision (e) and need not include the content of the comments as a part of the record.

"(7) Within five days after the filing of the notice required by subdivision (a) of Section 21152, the lead agency shall certify the record of the proceedings for the approval or determination and shall provide an electronic copy of the record to a party that has submitted a written request for a copy. . . .

"(8) Within 10 days after being served with a complaint or a petition for a writ of mandate, the lead agency shall lodge a copy of the certified record of proceedings with the superior court."

7

2014, to adopt a rule to facilitate the completion of judicial review of the downtown arena project's compliance with CEQA within 270 days.

### *The City's Review and Approval of the Downtown Arena Project*

Consistent with the deadlines set forth in section 21168.6.6, the City engaged in an expedited environmental review process. The City issued a notice of preparation of the EIR on April 12, 2013. The draft EIR was completed and posted on the City's Web site on December 16, 2013. Two days later, the documents relied upon by the City in preparing the draft EIR were also posted online. The City conducted an informal public workshop regarding the draft EIR on December 18, 2013, and a public hearing on January 23, 2014, before the close of public comments. All documents related to the project prepared by the City or submitted by Sacramento Basketball Holdings after the release of the draft EIR were posted on the City's Web site within three business days of the document's preparation or receipt by the City.

As required by section 21168.6.6, the City engaged in mediation with several interested parties (including Saltonstall's attorney) in February 2014 to address issues regarding the draft EIR. The City completed and posted on its public Web site the final EIR for the project on May 9, 2014. The Sacramento City Council certified the final EIR and approved the project on May 20, 2014. Demolition of the shopping mall began in summer 2014.

### *Saltonstall's Lawsuit and Motion for Preliminary Injunction*

The day after the City certified the final EIR and approved the project, Saltonstall filed a petition for writ of mandate in which she alleged the City violated CEQA by certifying the final EIR and that section 21168.6.6 violates the California Constitution. In the petition, Saltonstall requested a preliminary injunction, declaratory relief, and attorney fees.

8

The City filed its notice of determination on May 27, 2014, and certified the administrative record on June 2, 2014.

On June 10, 2014, Saltonstall filed a motion for preliminary injunction to stay demolition of the shopping mall, reiterating her contentions that the City violated CEQA by certifying the final EIR and section 21168.6.6 is unconstitutional. The City and Sacramento Basketball Holdings opposed the motion. The trial court denied the motion for preliminary injunction, rejecting Saltonstall's constitutional challenge by explaining section 21168.6.6 is "not unconstitutional because it includes 'unrealistic' time frames. While the court agrees with [Saltonstall] that the time frames are extremely (perhaps overly) aggressive, the court is not persuaded that this renders the statute unconstitutional, because the statute does not purport to divest the court of jurisdiction for failing to adhere to them. The statute directs the Judicial Council to adopt rules that require legal challenges (including any potential appeals) be resolved, *to the extent feasible*, within 270 days of certification of the administrative record."

The trial court also found Saltonstall had failed to make any showing of imminent harm to warrant a preliminary injunction. The trial court stated: "Section 21168.6.6's standard for injunctive relief is not met here. [Saltonstall] make[s] only passing arguments, unsupported with citation to authority or evidence, that construction of the downtown arena presents an 'imminent threat to the public health and safety' or would adversely affect 'unforeseen important' historical/archaeological artifacts or ecological values."

Saltonstall timely filed a notice of appeal from the order denying the motion for preliminary injunction.

## DISCUSSION

## I

### *Mootness*

We begin by addressing the City's contention that this appeal should be dismissed as moot. We decline to dismiss Saltonstall's appeal as moot.

An appeal is moot when a decision of "the reviewing court 'can have no practical impact or provide the parties effectual relief.' " (*MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 214.) We have the duty to avoid deciding a moot appeal. " '[T]he duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it. It necessarily follows that when, pending an appeal from the judgment of a lower court, and without any fault of the defendant, an event occurs which renders it impossible for this court, if it should decide the case in favor of plaintiff, to grant him [or her] any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal." ' [Citations.]" (*California Redevelopment Assn. v. Matosantos* (2013) 212 Cal.App.4th 1457, 1484.)

However, "an appellate court may resolve controversies that are technically moot if the issues are of substantial and continuing public interest. (*DeRonde v. Regents of University of California* (1981) 28 Cal.3d 875, 880.) Although courts generally avoid issuing advisory opinions on abstract propositions of law, they 'should *not* avoid the resolution of important and well litigated controversies arising from situations which are "capable of repetition, yet evading review." ' (*In re William M.* (1970) 3 Cal.3d 16, 24, fn. 14, italics added, quoting *Moore v. Ogilvie* (1969) 394 U.S. 814, 816, 1494, 23

10

L.Ed.2d 1, 4.)" (*In re J.G.* (2008) 159 Cal.App.4th 1056, 1062.) Thus, "[w]e have discretion to decide otherwise moot cases presenting important issues that are capable of repetition yet tend to evade review." (*Californians for Alternatives to Toxics v. Department of Pesticide Regulation* (2006) 136 Cal.App.4th 1049, 1069-1070, quoting *Conservatorship of Wendland* (2001) 26 Cal.4th 519, 524, fn. 1.)

We conclude Saltonstall's appeal presents issues of a continuing interest to the public but may by their very nature evade review. The gravamen of Saltonstall's constitutional challenge is that section 21168.6.6 violates the separation of powers because it imposes deadlines too short for the courts to meet. If Saltonstall's argument were to have merit, it would mean the trial and appellate courts labor under an unconstitutional (and, according to her, impossible) burden that results in a material interference with the core function of the courts. Saltonstall alleges a weighty infringement of one branch of government on a co-equal branch.

Section 21168.6.6 is limited in scope because it applies only to the Sacramento downtown arena. However, immediately preceding the statute challenged in this case is section 21168.6.5, in which the Legislature provided for expedited CEQA review of a project to build a stadium in Los Angeles. (§ 21168.6.5, subd. (a)(3), (e).) Subdivision (e) of section 21168.6.5 bears some resemblance to the accelerated deadlines provided in section 21168.6.6. Consequently, the issue of accelerated deadlines for CEQA review of a specific project appears to be an issue capable of repetition. Moreover, the nature of the constitutional challenge regarding impossibility of compliance with the deadlines under section 21168.6.6 makes the issue one capable of escaping review unless we exercise our discretion to decide the issues presented in this case. Accordingly, we exercise our discretion to consider Saltonstall's constitutional challenge on the merits.

11

## II

### *Whether Section 21168.6.6 Violates Separation of Powers*

Saltonstall contends section 21168.6.6 violates the separation of powers enshrined in the California Constitution. She reasons that section 21168.6.6 deprives the courts of power to grant injunctive relief to stop the downtown arena's construction if the project does not comply with CEQA. She further contends section 21168.6.6 violates separation of powers by imposing unrealistic short deadlines for review of the project's compliance with CEQA requirements. We are not persuaded.

### A.

### *Separation of Powers under the California Constitution*

Unlike the United States Constitution in which separation of powers is an implied doctrine, "[f]rom its inception, the California Constitution has contained an explicit provision embodying the separation of powers doctrine. (Cal. Const. of 1849, art. III, § 1, now art. III, § 3.) Article III, section 3, provides: 'The powers of State government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution.' Although the language of California Constitution article III, section 3, may suggest a sharp demarcation between the operations of the three branches of government, California decisions long have recognized that, in reality, the separation of powers doctrine ' "does not mean that the three departments of our government are not in many respects mutually dependent" ' (*Solberg v. Superior Court* (1977) 19 Cal.3d 182, 191 [137 Cal.Rptr. 460, 561 P.2d 1148]), or that the actions of one branch may not significantly affect those of another branch. Indeed, upon brief reflection, the substantial interrelatedness of the three branches' actions is apparent and commonplace: the judiciary passes upon the constitutional validity of legislative and executive actions, the Legislature enacts statutes

12

that govern the procedures and evidentiary rules applicable in judicial and executive proceedings, and the Governor appoints judges and participates in the legislative process through the veto power.  Such interrelationship, of course, lies at the heart of the constitutional theory of 'checks and balances' that the separation of powers doctrine is intended to serve."  (*Superior Court v. County of Mendocino* (1996) 13 Cal.4th 45, 52-53 (*County of Mendocino*).)

The doctrine of separation of powers "prohibits the legislative branch from arrogating to itself *core functions* of the executive or judicial branch."  (*Carmel Valley Fire Protection Dist. v. State of California* (2001) 25 Cal.4th 287, 298, italics added.) Even so, the doctrine "permits actions of one branch that may 'significantly affect those of another branch.' "  (*Ibid.*)  An unconstitutional invasion of judicial power requires legislation that would "defeat or materially impair" the court's inherent power to decide cases.  (*Ibid.*)

In *County of Mendocino*, the California Supreme Court explained that "to say that a court has 'inherent power' with respect to a particular subject matter or function . . . appears to mean simply that the court, by virtue of its status as one of the three constitutionally designated branches of government, has the power to act even in the absence of explicit constitutional or legislative authorization."  (13 Cal.4th at p. 57.) Under this understanding of the inherent power of the courts, "[i]t does not follow . . . that the Legislature necessarily violates the separation of powers doctrine whenever it legislates with regard to such an inherent judicial power or function."  (*Ibid*.)  Indeed, case law has long recognized the propriety of the Legislature providing "reasonable regulations affecting a court's inherent powers or functions, so long as the legislation does not 'defeat' or 'materially impair' a court's exercise of its constitutional power or the fulfillment of its constitutional function."  (*Id.* at pp. 58-59.)  Nearly a century ago,

13

the California Supreme Court recognized the Legislature "may provide rules of procedure" for the courts -- even to limit the monetary penalty and jail time a court may impose to punish a litigant for contempt. (*In re Garner* (1918) 179 Cal. 409, 413.)

The Legislature cannot abridge the prerogative of the courts to grant an injunction to protect a party's constitutional right. (*Modern Barber Col. v. Cal. Emp. Stab. Com.* (1948) 31 Cal.2d 720, 728 (*Modern Barber*).) However, there is a difference between constitutional rights and statutory rights such as those derived from CEQA. That "a court has the power to grant certain *remedies* . . . does not mean that the *rights* which those remedies were intended to protect have been fixed in the Constitution as of the time of its adoption and are thereafter immune from legislative change or regulation." (*Id.* at pp. 726-727.) As the *Modern Barber* court recognized, "Statutory changes are almost perpetual. New rights are created under which new equities arise. These make new cases in equity, of which the courts at once take cognizance. The jurisdiction of courts of equity is not thereby enlarged. *Neither is it diminished when by statutory changes some rights cease to exist, and certain cases which courts of equity once entertained can no longer arise*." (*Id.* at p. 728, italics added.) The United States Supreme Court has similarly recognized that "[o]ur constitutional principles of separated powers are not violated, however, by mere anomaly or innovation." (*Mistretta v. United States* (1989) 488 U.S. 361, 385 [102 L.Ed.2d 714].)

Under these principles, legislative additions and subtractions of statutory rights do not violate the California Constitution's doctrine of separation of powers unless the new laws have the effect of materially impairing the core function of a co-equal branch.

14

**B.**

***Facial or As Applied Challenge***

Before we consider whether section 21168.6.6 violates the California Constitution, we must determine whether Saltonstall presents a facial or an as applied challenge to the statute. A facial challenge rests on an assertion that the statute inherently runs afoul of constitutional guarantees. To prevail on a facial challenge, "petitioners cannot prevail by suggesting that in some future hypothetical situation constitutional problems may possibly arise as to the particular *application* of the statute . . . . Rather, petitioners must demonstrate that the act's provisions inevitably pose a present total and fatal conflict with applicable constitutional prohibitions.' " (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084, quoting Ar*cadia Unified School Dist. v. State Dept. of Education* (1992) 2 Cal.4th 251, 267.) By contrast, an as applied challenge *assumes that the statute or ordinance is valid* and asserts that the manner of enforcement against a particular individual or individuals or the circumstances in which the statute or ordinance is applied is unconstitutional. (*Tobe*, at p. 1089.)

In this case, Saltonstall presents a facial challenge to section 21168.6.6 because she argues the section "makes it impossible for the Court" to adhere to CEQA requirements. She also argues the legislation enacting section 21168.6.6 inherently "infringes on a core, constitutional judicial power of injunction . . . ." Although Saltonstall notes in passing that section 21168.6.6, "*as applied*, would allow demolition and construction of the arena to finish, depriving the trial court of any real remedy, depriving the appeal courts of any real remedy," she does not concede the statute can be valid under any enforcement effort. Thus, Saltonstall presents a facial challenge to section 21168.6.6 for which she must show the section inevitably violates separation of powers under the California Constitution.

15

## C.

### *Whether Section 21168.6.6 Denies Courts the Power to Issue Injunctive Relief*

Saltonstall argues section 21168.6.6 violates separation of powers in that it represents a legislative infringement on the power of the courts to issue injunctive relief. Saltonstall's argument concerns subdivision (h) of section 21168.6.6, which allows an injunction to stop construction of the downtown arena only upon a showing of imminent threat to public health and safety or unforeseen important historical, archaeological, or ecological values.[7] Saltonstall also alleges a separation of powers violation in section 21168.6.6's requirement that the Judicial Council implement a rule of court to facilitate completion of judicial review of the downtown arena project within three-quarters of a year after certification of the administrative record.[8] We reject the constitutional challenge.

---

[7] Subdivision (h) of section 21168.6.6 provides:

"(1)(A) In granting relief in an action or proceeding brought pursuant to this section, the court shall not stay or enjoin the construction or operation of the downtown arena unless the court finds either of the following: [¶] (i) The continued construction or operation of the downtown arena presents an imminent threat to the public health and safety. [¶] (ii) The downtown arena site contains unforeseen important Native American artifacts or unforeseen important historical, archaeological, or ecological values that would be materially, permanently, and adversely affected by the continued construction or operation of the downtown arena unless the court stays or enjoins the construction or operation of the downtown arena.

"(B) If the court finds that clause (i) or (ii) is satisfied, the court shall only enjoin those specific activities associated with the downtown arena that present an imminent threat to public health and safety or that materially, permanently, and adversely affect unforeseen important Native American artifacts or unforeseen important historical, archaeological, or ecological values."

[8] Subdivision (d) of section 21168.6.6 provides: "On or before July 1, 2014, the Judicial Council shall adopt a rule of court to establish procedures applicable to actions or

16

Properly viewed, section 21168.6.6 does not undermine the ability of the trial or appellate courts to issue injunctive relief. Indeed, subdivision (h)(1)(A) specifically allows the trial court to grant "relief in an action or proceeding brought pursuant to this section . . . ." Certainly, nothing in subdivision (h)(1)(A) eliminates or truncates the ability of an appellate court to issue injunctive relief in order to compel compliance with section 21168.6.6. And, perhaps most importantly, section 21168.6.6 does not tell any court how to decide an action brought to challenge construction of the downtown arena. For this reason, section 21168.6.6 does not materially impair the trial or appellate courts from fulfilling their adjudicatory functions.

Subdivision (h)(1)(A) of section 21168.6.6 does change the standards for granting injunctive relief in connection with the project. In general, the standard for granting injunctive relief involves balancing competing public interests: the harm if an injunction issues versus the harm if the project is allowed to proceed. "It is well established that when injunctive relief is sought, consideration of public policy is not only permissible but mandatory." (*O'Connell v. Superior Court* (2006) 141 Cal.App.4th 1452, 1471, quoting *Teamsters Agricultural Workers Union v. International Brotherhood of Teamsters* (1983) 140 Cal.App.3d 547, 555.) Nonetheless, under section 21168.6.6, subdivision (h)(1)(A), a court shall not stay or enjoin construction or operation of the downtown arena unless it finds construction or operation of the downtown arena presents an imminent threat to public health and safety, or would permanently and adversely impact unforeseen important historical, archaeological, or ecological resources.

---

proceedings brought to attack, review, set aside, void, or annul the certification of the environmental impact report for the project or the granting of any project approvals that require the actions or proceedings, including any potential appeals therefrom, be resolved, to the extent feasible, within 270 days of certification of the record of proceedings pursuant to subdivision (f)."

Which interests should be weighed, or even considered, against the benefits of a new downtown arena may be determined by the Legislature. We do "not sit in review of the Legislature's wisdom in balancing these policies against the goal of environmental protection because, no matter how important its original purpose, CEQA remains a legislative act, subject to legislative limitation and legislative amendment." (*Napa Valley Wine Train, Inc. v. Public Utilities Com*. (1990) 50 Cal.3d 370, 376, abrogated on another point in § 21080.04, subd. (b).) It is the prerogative of the Legislature to determine whether "an interest is important enough to justify foregoing the benefits of environmental review." (*Id.* at p. 382.) "The judiciary may be asked to decide whether a statute is arbitrary or unreasonable for constitutional purposes [citation], but no inquiry into the 'wisdom' of underlying policy choices is made. [Citation.]" (*People v. Bunn* (2002) 27 Cal.4th 1, 17.)

Saltonstall properly concedes the Legislature could entirely exempt the downtown arena project from *any* review under CEQA. Such complete exemption from CEQA would not implicate any constitutional right because "[t]he rights derived from the environmental quality act are not of constitutional dimension and the Legislature constitutionally may eliminate any of its requirements." (*Sagaser v. McCarthy* (1986) 176 Cal.App.3d 288, 299.) Because the complete elimination of any CEQA review for the downtown project is a public policy determination that would pass constitutional muster, so too the Legislature's specification of the interests to be weighed in determining whether to halt construction of the project represents a determination of public policy the Legislature is entitled to make. (See *Sagaser, supra,* 176 Cal.App.3d at p. 311.) Consequently, we reject the argument that the Legislature's determination, in section 21168.6.6, of factors justifying an injunction to stop work on the downtown arena project poses an unconstitutional infringement on the power of the courts.

18

**D.**

*Whether Section 21168.6.6 Imposes Impossible Timelines on the Courts*

Next, it appears Saltonstall argues that the deadlines imposed for judicial review of the downtown arena are impossibly short, and thereby prevent the courts from fulfilling their adjudicatory functions. At oral argument, we attempted to discern whether Saltonstall's separation of powers argument regarding the legislative directive for the Judicial Council to enact a rule of court to implement section 21168.6.6 concerned (1) the very fact that the Legislature *instructed* the Judicial Council to do something (here, to enact a rule of court), or (2) the *nature of the timeline* to be recognized by the new rule.

To the extent Saltonstall challenges the very fact of direction by the Legislature, we reject this argument because the Legislature may direct the Judicial Council to adopt rules of court to implement statutes that do not " 'defeat' or 'materially impair' a court's exercise of its constitutional power or the fulfillment of its constitutional function." (*County of Mendocino, supra*, 13 Cal.4th at pp. 58–59.) Thus, the mere fact of direction to adopt a rule of court does not violate the separation of powers doctrine. (E.g., *Jevne v. Superior Court* (2005) 35 Cal.4th 935, 940 [legislative direction to the Judicial Council to adopt ethics standards for neutral arbitrators in contract arbitration].)

Insofar as Saltonstall contends the deadlines imposed on the judicial function are impossibly short, we reject the contention based on subdivision (d) of section 21168.6.6. Subdivision (d) of section 21168.6.6 requires the Judicial Council to "adopt a rule of court to establish procedures applicable to actions or proceedings brought to attack, review, set aside, void, or annul the certification of the environmental impact report for the project or the granting of any project approvals that require the actions or proceedings, including any potential appeals therefrom, be resolved, *to the extent*

19

*feasible*, within 270 days of certification of the record of proceedings pursuant to subdivision (f)." (Italics added.)

Section 21168.6.6 does not impose any penalty for review that exceeds the 270 days. For example, the statute does not declare the case to be moot, deprive any court of jurisdiction, or declare a particular winner on a certain date. Saltonstall acknowledges that, even though section 21168.6.6 applies to any appeal, it does not affect the California Constitution's 90-day deadline for issuance of a decision after submission of the case for decision. (Cal. Const. art. VI, § 19.) Because the 270-day timeline for review is suggestive, we reject Saltonstall's contention that section 21168.6.6 materially impairs the core function of the courts. In short, Saltonstall has not shown section 21168.6.6 crosses over the line from reasonable regulation to a material impairment of the courts' exercise of power to adjudicate this case. (*County of Mendocino*, *supra*, 13 Cal.4th at pp. 58-59.)

## III

### *Denial of the Motion for Preliminary Injunction*

Saltonstall appears to contend the trial court erred in denying her motion for preliminary injunction.[9] We conclude Saltonstall does not establish any error by the trial court in denying the motion for preliminary injunction.

---

[9] Although Saltonstall asserts the downtown arena project "harms [her] and the environment; not NBA," she does not specifically advance a claim of error by the trial court in denying a preliminary injunction. Nonetheless, her appeal from the denial of the motion for preliminary injunction along with the assertion on appeal about "immediate and irreparable demolition harm," lead us to construe her argument as concerning the trial court's decision not to stay demolition or construction for the project.

20

## A.

### *Saltonstall's Burden to Secure a Preliminary Injunction*

A trial court's decision on whether to grant a preliminary injunction rests on " '(i) the likelihood that the party seeking the injunction will ultimately prevail on the merits of his [or her] claim, and (ii) the balance of harm presented, i.e., the comparative consequences of the issuance and nonissuance of the injunction.' " (*Law School Admission Council, Inc. v. State of California* (2014) 222 Cal.App.4th 1265, 1280, quoting *Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 441-442.) The burden is on the party seeking the preliminary injunction to show all of the elements necessary to support issuance of a stay. (*O'Connell v. Superior Court, supra,* 141 Cal.App.4th at p. 1481.) On appeal, we review the question of whether the trial court has abused its discretion in evaluating these factors. (*Law School Admission Council* at p. 1280.)

## B.

### *Required Showing for a Preliminary Injunction Under Section 21168.6.6*

Having rejected Saltonstall's facial challenge to section 21168.6.6, we proceed to consider the requirements it imposes for the issuance of a preliminary injunction to halt work on the downtown arena project. Subdivision (h) precludes a preliminary injunction in the absence of a finding by the trial court that the project "presents an imminent threat to the public health and safety," or adversely affects "unforeseen important Native American artifacts or unforeseen important historical, archaeological, or ecological values."

In the trial court, Saltonstall failed to make the necessary showing to secure a preliminary injunction. The trial court found Saltonstall made "only passing arguments, unsupported with citation to authority or evidence, that construction of the downtown

21

arena presents an 'imminent threat to the public health and safety' or would adversely affect 'unforeseen important' historical/archaeological artifacts or ecological values."

Rather than attempting to demonstrate she made the requisite evidentiary showing of the factors specified in subdivision (h) of section 21168.6.6, Saltonstall asserts respondents would not have been disadvantaged by a stay of construction. Saltonstall asserts no evidence shows "that the NBA will yank the team" if the project is not timely completed, the City's finances "are not affected" by any construction delay, and Sacramento Basketball Holdings is not harmed by a stay. Saltonstall's argument rests on a misunderstanding about the showing required to secure a preliminary injunction under section 21168.6.6.

To secure a preliminary injunction, Saltonstall bears the burden of demonstrating an imminent threat to public health and safety or to previously unknown historical or ecological values. (*O'Connell, supra,* 141 Cal.App.4th at p. 1481; § 21168.6.6, subd. (h)(1)(A)(i)-(ii).) Thus, Saltonstall's assertions regarding lack of harm to the respondents are irrelevant to the analysis of whether the trial court erred in denying the motion for a preliminary injunction. Even if we assume for the sake of argument that the City and Sacramento Basketball Holdings would suffer no financial loss and the NBA would not "yank" the Sacramento Kings as a result of the delay arising from a stay of construction, lack of harm to respondents does not prove or disprove any of the factors upon which a preliminary injunction may be issued under subdivision (h) of section 21168.6.6.

We also reject Saltonstall's unsubstantiated assertion, "the Steinberg bill [Senate Bill 743] harms [her], the public, and the environment." Saltonstall appears to assert the legislation itself causes the harm when she argues "[t]he underlying prejudice of . . . §21168.6.6 to [her] and to the public is its corruption of CEQA procedure, a complex procedure to be sure, but one predicated on following that procedure to assure public

22

disclosure."[10]  We reject the argument for two reasons.  First, section 21168.6.6 is a

statute and not the physical cause of any threat for which subdivision (h) authorizes

injunctive relief.  Second, as we have noted and Saltonstall concedes, the Legislature has

the prerogative to exempt the downtown arena from any CEQA review.  Accepting

Saltonstall's argument would mean the Legislature can only impose full-fledged CEQA

review under sacrosanct existing deadlines *or* completely exempt a project from any

CEQA review.  This is an untenable conclusion in light of the Legislature's power to

make public policy determinations and amend existing laws.  (*Modern Barber, supra,* 32

Cal.2d at pp. 726-728.)  The existence of section 21168.6.6 does not itself compel the

issuance of a preliminary injunction to stay construction of the project.

We conclude Saltonstall failed to make the required showing for a preliminary

injunction under section 21168.6.6.  Thus, the trial court did not err in denying

Saltonstall's motion for a preliminary injunction.

## *IV*

### *The City's Request for Sanctions on Appeal*

Citing Code of Civil Procedure section 907, the City, in its respondent's brief,

requests that we impose monetary sanctions on Saltonstall for a frivolous appeal that

"appears to serve no purpose but to harass the City . . . ."  We deny the request because

the City has not filed a motion for sanctions along with a declaration supporting the

---

**10**     To the extent Saltonstall intends to argue she made an adequate factual showing of
harm for which section 21168.6.6 allows injunctive relief, we deem the issue forfeited for
failure to make anything more than "only passing arguments, unsupported with citation to
authority or evidence," that a preliminary injunction should issue.  (*K.C. Multimedia, Inc.
v. Bank of America Technology & Operations, Inc*. (2009) 171 Cal.App.4th 939, 948-949
[failure to properly tender an issue in the trial court forfeits the issue for purposes of
appellate review]; *People v. Partida* (2005) 37 Cal.4th 428, 435 ["A party cannot argue
the court erred in failing to conduct an analysis it was not asked to conduct"].)

23

amount sought. California Rules of Court, rule 8.276(b)(1) provides that a motion for sanctions on appeal "must include a declaration supporting the amount of any monetary sanction sought and must be served and filed before any order dismissing the appeal but no later than 10 days after the appellant's reply brief is due." For lack of compliance with rule 8.276(b)(1), we deny the City's request for sanctions. (*In re Marriage of Petropoulos* (2001) 91 Cal.App.4th 161, 180.)

## DISPOSITION

The order denying appellants', Adriana Gianturco Saltonstall et al., motion for a preliminary injunction is affirmed. Respondent City of Sacramento's request for monetary sanctions is denied. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (5).)


       HOCH     , J.


We concur:


   NICHOLSON   , Acting P. J.


     MAURO    , J.