[Civ. No. 24882.  First Dist., Div. Three.  Jan. 10, 1969.]

NATIONAL ASSOCIATION OF WINE BOTTLERS et al., Plaintiffs and Appellants, v. CHARLES PAUL, as Director of the Department of Agriculture, etc., Defendant and Appellant.

742

J. Albert Hutchinson for Plaintiffs and Appellants.

Thomas C. Lynch, Attorney General, Walter S. Rountree, Assistant Attorney General, and Roderick Walston, Deputy Attorney General, for Defendant and Appellant.

BROWN (H.C.), J.—This is an appeal from an adjudication declaring certain marketing orders of the appellant,

Director of Agriculture, void and permanently enjoining appellant from enforcing any of those orders.

The principal issue litigated in the trial court was whether the Director of Agriculture (Director) had the power under the unusual circumstances existing to prohibit sales of bulk grape products below cost and, if so, whether under the facts the Director exceeded his powers and attempted to set a minimum price. The trial court at the hearing on the petition for permanent injunction concluded that the Director "is without . . . authority to fix or determine any price . . . of bulk [grape products]" or "to require the reporting to, or posting with defendant of prices." He enjoined the Director permanently from enforcing the marketing order.

*Subsequent to the filing of this appeal on June 30, 1968, the marketing order upon which this case is based was terminated by the Director because of a failure of a majority of the processors to assent to its continuation. The supplemental orders regarding the 55-cent cost had also been rescinded.*

■ Although there is now no marketing order in existence, neither party has considered the matter moot. We have concluded that the facts presented in the record, to which we shall hereafter refer, compel a conclusion that there is no actual controversy to decide which a judgment will carry into effect and that the issues litigated in the trial court have been rendered moot.

The Facts: In 1965, California's grape crop was a record-breaking 3,960,000 tons, exceeding the previous largest grape crop by over a half-million tons. The quantity of grapes crushed for the production of wine, the principal outlet of grape production, was approximately two million tons, also a record high. Most of the grapes crushed for wine, approximately 52 percent, were used in the preparation of dessert wine. The wineries which produced the dessert wine, processing it into bulk form, had record inventories of the bulk product in stock; in spite of record sales, the market for bulk dessert wine failed to provide an outlet for the mounting surpluses. As a result, the price of bulk dessert wine became depressed, dropping from a normal price of around 65 cents per gallon to 45 cents per gallon and lower.

Pursuant to the provisions of the California Marketing Act of 1937 and in response to a written request of several members of the bulk dessert wine industry, the Director held a public hearing on June 7, 1966. The testimony at this hearing was to the effect that bulk dessert wine was being sold at

prices considerably less than the normal cost of producing such wine and that the situation in the bulk dessert wine industry was chaotic and disruptive, and the stability of the entire wine industry was threatened.

To relieve the conditions described above, the Director promulgated a marketing order for bulk dessert wine, effective July 18, 1966. The essential feature of the marketing order provides as follows: "The sale or distribution of bulk dessert wine, bulk grape concentrate, or bulk high proof by any processor or distributor at less than cost is hereby declared to be an unfair trade practice and is prohibited by this Marketing Order." A proviso contained in this section provides that notwithstanding the order, a processor or distributor "may meet the legal price of a competitor selling a like type, grade or variety." Another section excludes any processor or distributor who sells in containers of one gallon or less. In effect this means that the order will not apply to processors who do their own bottling.

The marketing order contains authority for the Director or advisory board to conduct a survey to determine the cost of producing and distributing bulk grape products and states ". . . [S]uch cost shall be prima facie evidence of the cost of producing and distributing bulk [grape products]."

According to the results of the ensuing survey, the industry-wide cost of processing grapes into bulk dessert wine was 18.3 cents per gallon, the industry-wide cost of the raw grapes was 37 cents per gallon, and thus the industry-wide cost of producing the finished product was in excess of 55 cents per gallon. The Director notified the members of the industry of the results of the survey, advising the members that "the prima facie cost of Bulk Dessert Wine is not less than fifty-five cents ($0.55) per gallon," and ordered that no sale be made for less than 55 cents per gallon, declaring that "all processors are on notice that shipments made after 10 P.M., July 22, 1966, at less than 55 cents per gallon f.o.b. are subject to the full penalty of the law."

The respondents are an association of wine bottlers and member corporations. All are from states other than California and are engaged in the business of purchasing bulk grape products from California processors for the purpose of bottling and selling to wholesale and retail establishments in various states other than California. These corporations had contracts with the processors affected by the marketing order and proposed to negotiate similar contracts in the future. One

of the group petitioned the Director to have the orders set aside but the Director denied the petition after a hearing on the matter.

The Association then filed a complaint seeking injunctive relief. The court after a hearing for interim relief concluded that the Director is empowered under California law to issue the marketing order which prohibits the sale of bulk grape products below cost. He also concluded that ''the procedures, conduct and results of the cost survey . . . were not arbitrary and capricious, and were pursuant to and in accordance with the authority vested in the Director . . .'' and authorized under the Marketing Act of 1937.

At the hearing on the petition for a permanent injunction, however, the court in granting the injunction viewed the Director's actions as an unlawful attempt to fix a minimum price for the sale of bulk grape products. It concluded that the Director is without authority to *''fix or determine any price . . . of bulk [grape products]''* or *''to require the reporting to, or posting with defendant of prices.''* [Italics added.] It permanently enjoined the Director from enforcing his supplemental orders regarding the cost survey and from enforcing the Marketing Order itself ''to the extent and in the respects the same, fix or purport to fix prices . . .'' The decree does not specifically enjoin the Director from forbidding sales below actual cost.

The trial court granted the permanent injunction on August 9, 1967. Thereafter, the Director filed a petition for a writ of supersedeas which was denied by the Court of Appeal but on application to the Supreme Court, supersedeas was granted, and the case was transferred back to this court.

On June 30, 1968, pursuant to section 59083 of the Agricultural Code and because of the failure of a majority of the processors to assent to the continuation of the marketing order, *the Director issued a directive terminating it. The marketing order upon which this case is based is no longer in effect. The same is true of the supplemental orders regarding the 55-cent cost which was rescinded by the Director on March 11, 1968.*

Under the facts as here stated, the appellant contends the issues are not moot because (1) it is conceivable that the Director will at some future time repromulgate the order if similar chaotic conditions in the grape industry recur; (2) that public interest requires the issue be now decided to prevent irreparable damage that might be caused by lengthy,

time-consuming litigation if the Director again issued a similar order, and (3) that if the appeal were dismissed as moot, the permanent injunction issued by the superior court would become viable again.

We have concluded that appellant's contention is without merit.

■ It is well settled that the duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it (*Paul* v. *Milk Depots, Inc.*, 62 Cal.2d 129, 132 [41 Cal.Rptr. 468, 396 P.2d 924]).

Since the marketing order on which this case is based is no longer in effect, a decision of this court obviously cannot affect it. The parties desire the opinion of this court as to the power of the Director to prohibit sales of bulk grape products below actual cost in a subsequent order. But, an actual controversy does not exist at present and since the injunction did not specifically enjoin the Director from prohibiting sales below actual cost, an opinion on this issue would be no more than dicta.

■ It is believed that the facts here are within the general rule that the judicial function is the determination of actual controversies between parties and the court may not concern itself with settling abstract questions of law which may never be involved in an actual dispute regarding property or other rights. (*Guardianship of Thomas,* 125 Cal. App.2d 135 [269 P.2d 947].) ■ Although a case may originally present an existing issue (as here), if. before decision is reached, it has, through acts of the parties or other cause, lost that existent character, it is rendered moot and may not be considered. (See *Wilson* v. *Los Angeles County Civil Service Com.,* 112 Cal.App.2d 450, 453 [246 P.2d 688] ; 1 Cal.Jur.2d, pp. 582-584; *California Prune & Apricot Growers Assn.* v. *Pomeroy Orchard Co.,* 195 Cal. 264 [232 P. 463].)

■ It is true, as appellant argues, that the appellate courts have considered an issue not to be moot if that issue relates to a matter of public interest and if there is great likelihood that the matter will arise again in the future. (*Terry* v. *Civil Service Com.,* 108 Cal.App.2d 861 [240 P.2d 691] ; *Board of Education* v. *Watson,* 63 Cal.2d 829 [48 Cal.Rptr. 481, 409 P.2d 481] ; *County of Madera* v. *Gendron,* 59 Cal.2d 798, 804 [31 Cal.Rptr. 302, 382 P.2d 342, 6 A.L.R.3d 555] ;

*DiGiorgio Fruit Corp.* v. *Department of Employment,* 56 Cal.2d 54 [13 Cal.Rptr. 663, 362 P.2d 487].) While recognizing the magnitude and importance of the wine industry in California, the issuance of the market order here, only applicable to processors of bulk dessert wine products, is not affected with the same type of interest to the public as is presented in the cases relied upon by appellant. In the cited cases there was great certainty that the matters before the courts would be presented again and the public interest involved was of immediate concern to individuals not directly involved in the pending proceeding.

In the present case, it is highly speculative whether the issue will come up again. First, there must be a year where over-production produces a chaotic market. Second, the Director must decide to meet the situation by enacting just such another order which is extremely doubtful now that the features objectionable to the parties have been presented and litigated to this point. Third, the required number of processors must assent to the order.

The appellant's contention that if the appeal was dismissed as moot, the injunction issued by the superior court would become viable again and would in effect be an affirmance of the judgment on the order appealed from (Code Civ. Proc., § 955) is answered by *Paul* v. *Milk Depots, Inc., supra.* The court in order to avoid an implied affirmance in declaring moot an appeal from a judgment holding unconstitutional a regulation of the Director, reversed the judgment solely for the purpose of restoring the matter to the jurisdiction of the superior court, with directions to the court to dismiss the proceeding. "Such a reversal, of course, does not imply approval of a contrary judgment, but is merely a procedural step necessary to a proper disposition of this case." (*Paul* v. *Milk Depots, Inc., supra,* 62 Cal.2d 129, 135.)

The respondent association has also appealed from the denial of the preliminary injunction and petition for alternative writ of mandate. The decision granting the permanent injunction has rendered moot an appeal from denial of the preliminary injunction. (*Pahl* v. *Ribero,* 193 Cal.App.2d 154, 160-161 [14 Cal.Rptr. 174].) Also, the decision granting the peremptory writ of mandate has rendered moot the order denying the alternative writ.

It is concluded therefore that the issues presented on this appeal have been rendered moot, and the judgment is there-

fore reversed for the purpose of remanding the case to the trial court which is directed to dismiss the action.

The appeal of plaintiffs-respondents is dismissed as moot. The judgment is reversed with the aforesaid directions.

Draper, P. J., and Salsman, J., concurred.

The petition of the plaintiffs and appellants for a hearing by the Supreme Court was denied March 5, 1969.