[Civ. No. 73-59. Second Dist., Div. Five. May 23, 1974.]

In re the Marriage of MARTHA SCOTT and SAUL SHAPIRO.
MARTHA SCOTT SHAPIRO, Appellant, v.
UNION BANK, as Executor, etc., Respondent.

## Counsel

Ross & Saunders and E. Loyd Saunders for Appellant.

Greenberg & Glusker and Michael K. Collins for Respondent.

## Opinion

**KAUS P. J.**—This application or motion for a "stipulated reversal" of a trial court judgment was filed by appellant Martha Shapiro and by the Union Bank, respondent and executor of the will of Saul Shapiro.

In August 1972 an interlocutory judgment was entered dissolving the marriage of Martha and Saul Shapiro, determining separate and community property, approving as valid a 1962 property settlement agreement, and ordering a division of the community property.

In October 1972, Martha filed a timely notice of appeal from those provisions in the interlocutory judgment dealing with the property. In December 1972, Saul died. No final judgment of dissolution has been entered. The Union Bank was appointed executor under Saul's will and an appropriate substitution of parties was effected.

All of the primarily affected parties—Martha and the various beneficiaries under the husband's will—entered into a settlement agreement concerning Saul's estate. The agreement encompassed the property covered by the interlocutory judgment on appeal. The settlement agreement "requires that the parties take appropriate steps to cause the appeal [*sic*]

to be reversed and remanded to the Superior Court and the interlocutory judgment to be modified to accord with the Settlement Agreement."

In December 1973, the attorneys for wife and Union Bank filed a stipulation and motion to reverse the interlocutory judgment and to remand the case to the superior court for modification. This document has been supplemented by additional submissions.

The reason stated for not just abandoning the appeal is that ". . . it appears that the effective date of the judgment would relate back to the date of entry, prior to the husband's death. This would destroy the community character of the property and, because of the terms of the judgment, would result in a division and distribution of the property effective as of a date prior to the husband's death. The property would not be distributed through probate and *the wife would suffer substantial and unnecessary tax burdens.*" (Italics added.)

We do not know exactly how much money and property is involved in husband's estate. However, the amount of just the disputed property in the dissolution action was about $6,200,000. The settlement will yield to Martha "a tax savings of between 45-55%. . . ."

We are also told that "some of the issues on this appeal arise from [Martha's] argument that the judgment imposes large and improper tax burdens on her; the distribution of property to [Martha] through probate, instead of pursuant to a judgment of dissolution, would result in a different basis of taxation of the property and would resolve [her] objections thereto."

Martha's attorney states that an appeal would be meritorious and that "there is probable cause for the reversal of the judgment. . . ." The bank's attorney agrees that the appeal presents "substantial issues," but does not agree that the trial court erred in the judgment. Both parties agree that an appeal would be costly. The estimated costs of transcripts on appeal are, so far, about $10,500. In view of the contemplated settlement, no record has been prepared.

The parties agree that "the only way to effectuate the settlement is through a reversal of the judgment. . . ."

We infer from all this that the reason for the necessity of a reversal is that the tax savings which it would generate are a *sine qua non* for the settlement to which all interested parties have agreed.

## Discussion

■ The parties base their application for a stipulated reversal on the following rule: "[A]n action which originally was based upon a justiciable controversy cannot be maintained on appeal if all the questions have become moot by subsequent acts or events. A reversal of the case would be without practical effect, and the appeal will therefore be dismissed. . . . [¶] *Where, though the case is moot, dismissal would accomplish the wrong result, the correct order should be summary affirmance or reversal with directions.*" (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 462, pp. 4418-4419. [Italics added.])

The statement of the rule demonstrates its inapplicability. This case is not moot; to the contrary, according to the parties, the case will become moot only if this court reverses the trial court judgment, thus permitting the settlement to take effect. (*Landberg* v. *Landberg,* 24 Cal.App.3d 742, 746 [101 Cal.Rptr. 335].) Present mootness followed by a reversal is one thing; future mootness based on a settlement which is conditioned on the reversal because the reversal itself is a source of funds, is something quite different.

■ An appellate court may properly reverse on stipulation after the court has decided, or had the opportunity to decide, the merits of the dispute. (E.g., *Estate of Davis,* 8 Cal.2d 11 [63 P.2d 827]; *Lyon* v. *Aronson,* 140 Cal. 369 [73 P. 1131]; *Courts* v. *Smart,* 33 Cal.App.2d 89 [91 P.2d 135]; *Clay* v. *Clay,* 19 Cal.App.2d 589 [65 P.2d 1363]; *Barton* v. *Maal,* 12 Cal.App.2d 353 [55 P.2d 529]; cf. *Lovret* v. *Seyfarth,* 22 Cal.App.3d 841, 855 [101 Cal.Rptr. 143].)[1]

Similarly, a reviewing court may properly reverse without briefing where the issue has been decided by another court or in a companion case. (E.g., *Estate of Geltman,* 152 Cal.App.2d 560, 561 [314 P.2d 78]; *Melancon* v. *Walt Disney Productions,* 127 Cal.App.2d 213, 215 [273 P.2d 560]; *Pacific Gas & Electric Co.* v. *Davis,* 93 Cal.App.2d 869 [209 P.2d 12]; *Foster* v. *Carey,* 35 Cal.App.2d 744 [96 P.2d 155].)

■ In this case, we know nothing about the merits other than Martha's sketch of the reasons for appealing. Moreover, we are asked to reverse, not because of trial court error, but because of the "fairness"

[1]Thus, in *Courts* v. *Smart, supra,* 33 Cal.App.2d 89, 90, the court stated in reversing the judgment: "All of the parties . . . have joined in a stipulation requesting a reversal of . . . the judgment . . . *and it appears from an examination of the record on appeal, including the transcript of the evidence, that legal grounds exist for the granting of such request.*" (Italics added.)

of the settlement, a matter that is not, and cannot be, properly before this court.

To be sure, there are certain situations where public policy considerations dictate a reversal in a "moot" case, such as when a statute, held unconstitutional by a trial court, has been repealed, and the appellate court wishes to avoid any appearance of approving the trial court's judgment by dismissing the appeal. (E.g., *Paul* v. *Milk Depots, Inc.*, 62 Cal.2d 129, 134 [41 Cal.Rptr. 468, 396 P.2d 924]; *Callie* v. *Board of Supervisors*, 1 Cal.App.3d 13, 18-19 [81 Cal.Rptr. 440]; *National Assn. of Wine Bottlers* v. *Paul*, 268 Cal.App.2d 741, 747 [74 Cal.Rptr. 303]; *Wind* v. *Hite*, 221 Cal.App.2d 466 [34 Cal.Rptr. 662].)

There are, of course, no such or similar public policy considerations in this case. The trial court has merely made a judgment, which may or may not be correct, concerning the disposition of the parties' property.

Finally, our reversing the judgment in this case is intended by the parties to have consequences affecting interests not directly involved in this proceeding, that is, those of the taxing authorities.

In brief, for reasons totally outside the potential scope of our review of this matter, we are asked to reverse a judgment with which this court has no quarrel at this point.

The motion or application for a stipulated reversal is denied.

Stephens, J., and Hastings, J., concurred.

The petitions of the appellant and the respondent for a hearing by the Supreme Court were denied July 31, 1974.