Filed 2/1/21  Center for Environmental Science etc. v. Dept. of Water Resources CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| CENTER FOR ENVIRONMENTAL SCIENCE, ACCURACY & RELIABILITY,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>DEPARTMENT OF WATER RESOURCES et al.,<br><br>Defendants and Respondents. | C080967<br><br>(Super. Ct. No. 34201580002085CUWMGDS) |

In May 2015, during a time of record drought, defendant California Department of Water Resources (the Department) began construction of a salinity barrier at the West False River to inhibit the intrusion of saltwater into a portion of the Sacramento-San Joaquin River Delta (the Delta).  The Department did so pursuant to the declaration of a state of emergency and the issuance of Executive Order No. B-29-15 (Governor's Exec. Order No. B-29-15 (April 1, 2015)) (the EO) by defendant Governor Edmund G. Brown,

1

Jr. (the Governor). On the day construction of the salinity barrier began, the plaintiff Center for Environmental Science, Accuracy & Reliability (CESAR) filed a petition seeking, among other things, injunctive relief halting the project until the completion of review pursuant to the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.). CESAR then filed a first amended petition and complaint with two causes of action, seeking mandamus relief and declaratory relief, among other things, suspending the project, vacating its approval, and requiring the Department to perform CEQA review of the project. Defendants, the Department and the Governor, demurred and the trial court sustained the demurrer, concluding, inter alia, that, because the Governor had suspended CEQA with respect to the project, the Department did not improperly proceed with the project without attaining CEQA compliance. The trial court dismissed the action with prejudice and without leave to amend.

CESAR raises a number of contentions on appeal in asserting that the trial court erred in sustaining the demurrer without leave to amend and dismissing the action. However, the salinity barrier was removed in November 2015. As a result, we agree with defendants that the appeal has been rendered moot and no exception to the mootness doctrine should be applied under the circumstances of this case.

We dismiss the appeal as moot.

### FACTUAL AND PROCEDURAL BACKGROUND

#### Initial Factual Background

The Delta is formed on the western side of California's Central Valley at the confluence of the Sacramento and San Joaquin Rivers, east of where the rivers enter Suisun Bay, beyond which the waters flow into the San Francisco Bay and from there, into the Pacific Ocean. (*In re Bay-Delta etc.* (2008) 43 Cal.4th 1143, 1151.) The Delta forms the largest estuary on the West Coast, and it offers hundreds of miles of navigable waterways, supplies drinking water for many of California's residents, and provides irrigation water for agriculture. (*Ibid.*) A "major factor affecting water quality in the

2

Delta is saltwater intrusion. Delta lands, situated at or below sea level, are constantly subject to ocean tidal action. Salt water entering from San Francisco Bay extends well into the Delta, and intrusion of the saline tidal waters is checked only by the natural barrier formed by fresh water flowing out from the Delta. [¶] But as fresh water was increasingly diverted from the Delta for agricultural, industrial and municipal development, salinity intrusion intensified, particularly during the dry summer months and in years of low precipitation and runoff into the river systems." (*United States v. State Water Resources Control Bd.* (1986) 182 Cal.App.3d 82, 107.)

On January 17, 2014, the Governor declared a state of emergency based on record drought conditions. According to the Governor's proclamation, California had experienced extremely dry conditions since 2012, and 2014 was projected to be the driest year on record. California's water supplies had fallen to "alarming levels," and "California's major river systems, including the Sacramento and San Joaquin rivers, ha[d] significantly reduced surface water flows." On April 25, 2014, the Governor declared a continued state of emergency. The Governor stated that drinking water supplies were at risk.

On April 1, 2015, the Governor signed the EO at issue here. Among other things, the EO provided: "The Department shall take actions required to plan and, if necessary, implement Emergency Drought Salinity Barriers in coordination and consultation with the Water Board and the Department of Fish and Wildlife at locations within the Sacramento-San Joaquin delta estuary. These barriers will be designed to conserve water for use later in the year to meet state and federal Endangered Species Act requirements, preserve to the extent possible water quality in the Delta, and retain water supply for essential human health and safety uses in 2015 and in the future. [¶] The Water Board and the Department of Fish and Wildlife shall immediately consider any necessary regulatory approvals for the purpose of installation of the Emergency Drought Salinity

3

Barriers." For purposes of its provisions, the EO suspended CEQA and regulations adopted pursuant thereto as well as specified provisions of the Water Code.

After the issuance of the EO, the Department announced a project to install a rock dam or salinity barrier across a 750-foot-wide channel of the Delta at the West False River. The Department approved the project and commenced construction, without CEQA review, on May 6, 2015.

### CESAR's Petition and Application for Injunctive Relief, the Department's Opposition, and the Trial Court's Initial Ruling

On the same day construction of the salinity barrier began, CESAR, a California non-profit corporation endeavoring to "bring scientific rigor to regulatory decisions undertaken pursuant to environmental statutes" and to "ensure consistent application of these statutes," filed a verified petition for a writ of mandate, seeking to prevent the construction of the salinity barrier at West False River. CESAR asserted that the construction of the barrier would increase salinity of the water in unprotected areas of the Delta, thereby diminishing the amount of water available for Californians. Additionally, CESAR asserted that the construction of the barrier would modify or degrade the habitat of the federally protected delta smelt and would harm the smelt by impairing essential behavioral patterns.

CESAR asserted that the Department's approval of the project and its decision to commence construction constituted final agency action. The petition emphasized that the Department intended to begin construction on the project on the same day the petition was filed, which is why CESAR sought an immediate injunction and/or a stay to preserve the status quo.

The first cause of action seeking a writ of mandate was premised on violation of CEQA. CESAR asserted that the project would have a significant impact on the environment. According to CESAR, the Department failed to make the required threshold determination under CEQA as to whether the project would have a significant

4

impact on the environment. Additionally, the Department provided no notice, opportunity for public comment, or review of the project. Therefore, according to CESAR, the Department failed to proceed in the manner provided by law.

The second cause of action seeking a writ of mandate was premised on violation of the federal Endangered Species Act (16 U.S.C. § 1531 et seq.) (Endangered Species Act) and 16 U.S.C. § 1538(a). CESAR asserted that the project would jeopardize the existence of the delta smelt, and adversely affect its habitat. According to CESAR, this would result in the Department "tak[ing]" the delta smelt within the meaning of the Endangered Species Act and 16 U.S.C. § 1538(a).

CESAR sought alternative and peremptory writs of mandate commanding the Department to vacate approval of the project, satisfy CEQA requirements, and suspend all activities related to the project until all CEQA requirements and federal laws protecting the delta smelt were satisfied. CESAR also sought a stay, a temporary restraining order, and preliminary and permanent injunctive relief prohibiting the Department from proceeding with the project until all applicable federal and state law requirements were satisfied.

On the same date, CESAR filed an ex parte application for a preliminary injunction and temporary restraining order on largely the same grounds. CESAR anticipated that the Department would argue that it was exempt from the obligation to undertake environmental review of the project based on the EO, which purported to suspend the CEQA requirements for projects implementing Emergency Drought Salinity Barriers. Among the reasons asserted by CESAR as establishing that reliance on the EO would be misplaced was its contention that the exemption would violate the public trust doctrine.[1] CESAR asserted that the Delta was part of the public trust. According to

_____

[1] Given our resolution of this appeal on mootness grounds, we need not delve into the public trust doctrine and its purported application here. Suffice it to say that under the

5

CESAR, there was no evidence that the Governor or anyone else in the executive branch considered the impact of the project on public trust resources.

The Department opposed CESAR's applications.  In arguing the balance of harms strongly favored denying CESAR's application, the Department asserted that halting the installation of the emergency salinity barrier would have enormous public health and public policy consequences.  According to the Department, failure to immediately install the barrier would result in the degradation of water quality rendering it an unacceptable water source for drinking water, commercial, and industrial uses, and would result in a risk to human health.  The Department further asserted that the high salinity concentrations which would result in the absence of the barrier would increase the cost of producing drinking water and result in economic hardships.  The Department also noted that the barrier would be removed in mid-November 2015.

The Department asserted that CESAR was unlikely to prevail on the merits of its first cause of action, alleging a violation of CEQA, because the Governor exempted the project from CEQA pursuant to his statutorily granted emergency powers.  The Department asserted that, during a proclaimed state of emergency, the Governor may suspend any regulatory statute.  The Governor accordingly suspended CEQA from applying to the project.  As a result, all of CESAR's arguments as to alleged noncompliance with CEQA were meritless because CEQA did not apply.

---

doctrine, the state "holds all of its navigable waterways and the lands lying beneath them 'as trustee of a public trust for the benefit of the people.' " (*Colberg, Inc. v. State of California ex rel. Dept. of Public Works* (1967) 67 Cal.2d 408, 416.)  The state has the " 'duty . . . to protect the people's common heritage of streams, lakes, marshlands and tidelands, surrendering that right of protection only in rare cases when the abandonment of that right is consistent with the purposes of the trust.' " (*San Francisco Baykeeper, Inc. v. State Lands Com.* (2015) 242 Cal.App.4th 202, 234, quoting *National Audubon Society v. Superior Court* (1983) 33 Cal.3d 419, 441.)  "The state has an affirmative duty to take the public trust into account in the planning and allocation of water resources, and to protect public trust uses whenever feasible." (*National Audubon Society*, at p. 446, fn. omitted.)

The Department asserted that CESAR's public trust argument was also meritless. The Department observed that CESAR's petition did not contain a cause of action for violation of the public trust. Further, the Department asserted: "[e]ven if [the EO] does not identify the public trust by name, the entire Order is self-evidently based precisely on the public trust and on article X, section 2 of the California Constitution."[2] The Department noted that the public trust doctrine and the California Constitution both protect the rights of the public to enjoy the waters of the State for navigation, commerce, fishing, recreation, and consumption, and, relying on Water Code section 106,[3] asserted that consumption is, statutorily, the highest and best use of the State's waters. The Department asserted that the project complied with the public trust doctrine because the State Water Resource Control Board's water quality certification order required the Department to comply with state water quality objectives, including those required for the protection of fish and wildlife. According to the Department, any challenge to its

---

[2] California Constitution, article X, section 2, provides in pertinent part: "It is hereby declared that because of the conditions prevailing in this State the general welfare requires that the water resources of the State be put to beneficial use to the fullest extent of which they are capable, and that the waste or unreasonable use or unreasonable method of use of water be prevented, and that the conservation of such waters is to be exercised with a view to the reasonable and beneficial use thereof in the interest of the people and for the public welfare. The right to water or to the use or flow of water in or from any natural stream or water course in this State is and shall be limited to such water as shall be reasonably required for the beneficial use to be served, and such right does not and shall not extend to the waste or unreasonable use or unreasonable method of use or unreasonable method of diversion of water . . . . This section shall be self-executing, and the Legislature may also enact laws in the furtherance of the policy in this section contained."

[3] Water Code section 106 provides: "It is hereby declared to be the established policy of this State that the use of water for domestic purposes is the highest use of water and that the next highest use is for irrigation."

compliance with those objectives would constitute a collateral challenge to the State Water Resource Control Board's water right and water quality determinations.

Also, with regard to CESAR's likelihood of success on the merits, the Department asserted that CESAR could not prevail on its second cause of action, alleging violation of the Endangered Species Act, because CESAR failed to comply with the citizen suit 60-day notice requirement. (See 16 U.S.C. § 1540(g)(2)(A).) The Department asserted that the failure to comply with the 60-day notice requirement was an absolute jurisdictional bar to maintaining an action or cause of action pursuant to the Endangered Species Act. In any event, the Department further asserted that it had complied with Endangered Species Act rules applicable to emergency government actions.

On May 15, 2015, the trial court denied CESAR's ex parte request for a temporary restraining order, scheduled a hearing for oral argument on CESAR's request for a preliminary injunction, and set forth the briefing schedule. In its oral ruling, the trial court stated that it was denying CESAR's request for a temporary restraining order, finding that, in the cause of action premised on CEQA, CESAR had not shown a likelihood of success on the merits because the EO suspended CEQA for the project. With regard to the cause of action premised on the Endangered Species Act, the trial court stated that CESAR had failed to show compliance with the 60-day notice requirement. Additionally, the trial court stated that CESAR had failed to make its showing that a balancing of the harms favored it.

**First Amended Petition and Complaint**

CESAR filed a first amended petition and verified complaint, which is the operative complaint. CESAR sought a writ of mandate commanding the Department to vacate approval of the project, satisfy all CEQA requirements, and suspend operation of the project until CEQA review had been satisfied; a permanent injunction enjoining the Department from proceeding with the project or any similar project until it had complied with CEQA review; and a declaration that the Governor's suspension of CEQA with

8

respect to the project, and the Department's approval of the project, violated the public trust doctrine.

In the first cause of action, asserted solely against the Department and seeking a writ of mandate, CESAR asserted that the project would have a significant impact on the environment and the Department had not made a threshold CEQA determination that it would not. CESAR asserted that the project did not qualify for the " 'Emergency Drought Salinity Barrier' " exemption from environmental review because the Department had been aware of the drought and its effect on salinity in the Delta for years, and there were ways it could have addressed the issue in a manner that fully protected the public trust values. CESAR asserted that the Department abused its discretion in failing to proceed in the manner required by law.

In the second cause of action, seeking declaratory relief against the Department and the Governor, CESAR asserted that the project would harm public trust uses. While acknowledging that the EO purported to exempt the project from CEQA or public trust review, CESAR asserted that the EO contained no analysis of the impact the project would have on public trust uses or consideration of how to avoid or minimize harm thereto. CESAR asserted that the Department's approval of the project was similarly deficient. Therefore, according to CESAR, the EO was null and void to the extent that it purported to exempt the project from CEQA review and from public trust review, as was the Department's approval of the project.

### Demurrer

Defendants filed a demurrer to the first amended complaint. Defendants asserted that the second cause of action did not state facts sufficient to constitute a cause of action for declaratory relief against either the Department or the Governor because declaratory relief was not an appropriate means by which to challenge an individual administrative decision such as the EO or the construction of the salinity barrier. Defendants further asserted that, under Code of Civil Procedure section 430.10, there was a defect or

9

misjoinder of parties because the Governor was not a proper party as he had no obligation to consider the public trust in issuing the EO. Defendants acknowledged the State does have an affirmative duty to take the public trust into account in the planning and allocation of water resources, and to protect the public trust where feasible. However, according to defendants, the EO did not direct any action that could be deemed the planning and allocation of water resources, and therefore the Governor was not required to consider the public trust doctrine in issuing the EO. Defendants asserted the EO directed the Department to exercise its discretion in determining whether a drought barrier was necessary, and therefore it did not constitute the planning or allocation of water resources. In other words, the Governor's direction to a state agency that it considers installing a drought barrier did not implicate the public trust doctrine. Any public trust obligations were to be considered by the Department and the relevant trustee agencies reviewing and approving of the project. Additionally, the suspension of CEQA could not be deemed the planning or allocation of water resources.

Defendants further asserted that, to the extent that the Governor was obligated to consider the public trust, judicially noticeable facts demonstrated that he did. Defendants asserted that the EO demonstrated that the Governor considered the public trust, inasmuch as it expressly weighed various public trust considerations. According to defendants, various directives in the EO "demonstrate that the very purpose of the [EO] is to preserve public trust values, in part by reducing water used for purposes that do not further those values."

Defendants also asserted that the first amended complaint failed to state facts sufficient to state a cause of action because the Governor had the authority to suspend the requirement of CEQA review of the project and he did so. Defendants noted that, pursuant to Government Code section 8571, after declaring a state of emergency, the Governor may suspend any regulatory statute or the orders, rules, or regulations of any state agency, where the Governor determines that strict compliance with such statute,

10

orders, rules, or regulations would prevent, hinder, or delay the mitigation of the effects of the emergency. Thus, the Governor's suspension of CEQA in the EO was authorized by law. The Governor suspended CEQA relevant to the project, and, accordingly, CESAR's claim based on CEQA noncompliance failed to state a cause of action.

### The Trial Court's Tentative Decision[4]

In a tentative decision, the trial court tentatively sustained defendants' demurrer. With regard to the first cause of action, the trial court began: CESAR's "first cause of action is based entirely on CEQA, and in its opposition to the demurrer it spends several pages explaining CEQA's requirements and the important purposes those requirements serve. While accurate, these arguments are beside the point, because attached to the petition is an Executive Order suspending CEQA for the project in question. If CEQA does not apply, then the entire basis for the first cause of action disappears." The trial court noted that the Governor had declared a state of emergency based on the severe drought conditions, and that, during a state of emergency, the Governor has the authority to suspend any regulatory statute where the Governor determines that strict compliance

---

[4] Defendants filed an application requesting that we take judicial notice of nine documents, including the trial court's tentative decision. This court deferred decision on the request pending the calendaring and assignment of the panel on this appeal. The tentative decision was subsequently included in the record on appeal as the supplemental original superior court file. Accordingly, we need not take judicial notice of that document. The other documents that were the subject of defendants' request for judicial notice are documents filed in *Center for Environmental Science, Accuracy & Reliability v. Cowin, et al.*, (E.D. Cal. June 8, 2016, No. 1:15-CV-01852 LJO BAM) 2016 U.S. Dist. Lexis 74896 (the federal action) in the United States District Court for the Eastern District of California (the Eastern District) and memorandum decisions and the judgment in that case. We grant defendants' request and take judicial notice of these documents. (See Evid. Code, §§ 451, subd. (a) [judicial notice shall be taken of the decisional law of this state and of the United States], 452, subd. (d)(2) [records of any court of record of the United States may be the subject of judicial notice], 459, subd. (a) [reviewing court shall take judicial notice of each matter the trial court was required to notice under section 451 and may take judicial notice of any matter specified in Evid. Code, § 452].)

with such statute would prevent, hinder, or delay the mitigation of the effects of the emergency. The trial court concluded that, because CEQA did not apply to the project, CESAR's claim that the Department failed to comply with the requirements of CEQA failed to state facts sufficient to constitute a cause of action, and therefore was subject to demurrer.

As for the second cause of action, the trial court first concluded that declaratory relief may be appropriate as to the Governor and the challenge of an executive order. With regard to the Governor, the trial court acknowledged the cases on which defendants relied for the proposition that declaratory relief cannot be used to review an administrative decision, but further stated that the EO was not an administrative decision. The trial court noted that declaratory relief may be employed to test the constitutionality of a statute, and, because the EO had the force and effect of law, the trial court stated that it did not see any "reason why this same line of authority would not also authorize a declaratory relief action to test the validity of an Executive Order."

However, the trial court further stated that any challenge to the salinity barrier was properly directed against the Department, not the Governor. The trial court stated that an action to enforce the public trust must be brought against the state entity which was responsible for taking or authorizing the action that allegedly will harm the public trust. The trial court continued: "Here, [CESAR] claims the dam harms the public trust, and the state entity that authorized and built the dam is the Department. [CESAR's] challenge thus must be brought against the Department, not the Governor. The court thus sustains the Governor's demurrer to the second cause of action."

The trial court further concluded that declaratory relief was not appropriate as to the Department. The trial court reasoned that CESAR essentially sought to challenge the validity of an administrative decision, specifically the Department's decision to approve and construct the salinity barrier. The trial court stated that the relevant case law established that an action for declaratory relief was not appropriate to review an

administrative decision.  Therefore, the trial court sustained the demurrer as to the second cause of action as asserted against the Department.

After stating that it was sustaining the demurrer, the trial court further stated that CESAR had not requested leave to amend, and that, while leave to amend is generally granted liberally, the court would not automatically grant leave to amend in the absence of a request.  The court subsequently stated:  "If [CESAR] seeks leave to amend, it needs to explain how it can amend its complaint to state a valid cause of action.  Unless it can do so, the demurrer is granted without leave to amend."

## Adoption of Tentative Decision and Judgment

In a minute order issued after the time scheduled for the hearing, the trial court stated that no party appeared at the hearing or contacted the court by telephone.  The trial court deemed the matter submitted, adopted its tentative ruling, and incorporated the tentative decision in the minute order.  On October 22, 2015, the trial court entered judgment dismissing the action with prejudice and without leave to amend.

## DISCUSSION

## I.  The Mootness Doctrine

" 'It is well settled that an appellate court will decide only actual controversies. Consistent therewith, it has been said that an action which originally was based upon a justiciable controversy cannot be maintained on appeal if the questions raised therein have become moot by subsequent acts or events . . . .  [T]he appellate court cannot render opinions " '. . . upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.  It necessarily follows that when, pending an appeal from the judgment of a lower court, and without any fault of the defendant, an event occurs which renders it impossible for this court, if it should decide the case in favor of plaintiff, to grant him any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal.' " ' " (*Giles v. Horn* (2002) 100 Cal.App.4th 206, 226-227.)  "Stated differently, moot cases 'are

"[t]hose in which an actual controversy did exist but, by the passage of time or a change in circumstances, ceased to exist." ' " (*Parkford Owners for a Better Community v. County of Placer* (2020) 54 Cal.App.5th 714, 722 (*Parkford Owners*).) Thus, "[a]n appeal should be dismissed as moot when the occurrence of events renders it impossible for the appellate court to grant appellant any effective relief." (*Cucamongans United for Reasonable Expansion v. City of Rancho Cucamonga* (2000) 82 Cal.App.4th 473, 479 (*Cucamongans*), citing *Eye Dog Foundation v. State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 541 (*Eye Dog Foundation*).)

As defendants assert, an appellate court may properly take judicial notice of matters and/or may take evidence on appeal and, based on those matters or that evidence, conclude that the appeal has been rendered moot. (*Long v. Hultberg* (1972) 27 Cal.App.3d 606, 608; *Millbrae Assn. for Residential Survival v. City of Millbrae* (1968) 262 Cal.App.2d 222, 232; see Code Civ. Proc., § 909; Cal. Rules of Court, rule 8.252.)

## II. Analysis

### 1. Mootness

In opposition to CESAR's initial petition, the Department noted prospectively that the barrier would be removed in mid-November 2015. Defendants represent to this court that, in November 2015, the Department caused the salinity barrier that is the subject of this case to be removed. Therefore, defendants assert that no justiciable controversy remains, and the appeal should be dismissed as moot.

In its complaint filed in the federal action, dated November 19, 2015, CESAR averred: "On November 15, 2015, the Project as installed at West False River was removed." In a memorandum in support of a motion to dismiss the complaint in the federal action by the defendant Mark Cowin, Director of the Department, Cowin asserted that the action was rendered moot by the removal of the salinity barrier. In supplemental briefing in that case, Cowin stated: "With the March 2016 precipitation, there is now no likelihood that [the Department] will construct an emergency salinity barrier in 2016. In

14

its letter withdrawing its applications for permits relating to construction of such a barrier, [the Department] told the [United States Army Corps of Engineers] and the State Water Board directly, 'Based on recent precipitation events and anticipated runoff in spring/summer, the [Department] has determined it does not need to proceed with the proposed 2016 West False River Salinity Barrier Project . . . ." He further represented to the Eastern District, as defendants do here, that, prior to 2015, the last time a drought barrier was installed was in 1977. In a letter from the Department to individuals in the United States Army Corps of Engineers, Sacramento District, and the State Water Resources Control Board, a representative of the Department withdrew its application for a permit, stating that it had determined there was no reasonable expectation that climate conditions in the foreseeable future would warrant installation of a salinity barrier. The representative did acknowledge that the Department "would like to continue to discuss with the regulatory agencies the issuance of a programmatic (long-term) permit to install a salinity barrier at West False River in 2017 and beyond as part of a more comprehensive multi-year drought contingency planning effort." The representative further stated that the Department anticipated "invoking the [Endangered Species Act] Section 7 consultation process for the programmatic permit." In a memorandum decision and order, the Eastern District noted that the salinity barrier had been completely removed by the Department in November 2015. The court granted the Department's motion to dismiss the complaint as moot and denied CESAR's motion to amend as futile. The Eastern District entered a judgment in accordance with that order.

Thus, based on the representations made by defendants before this court and by the Department before the Eastern District, and acceded to by CESAR in the federal action, the salinity barrier that is the subject of this action no longer exists following its removal in November 2015.

CESAR did not file a reply brief here to respond to the factual allegation concerning the removal of the salinity barrier or defendant's mootness argument.

We agree with defendants that the removal of the salinity barrier has rendered CESAR's appeal moot. As for the potential for "any similar project in the Delta" and the need for a permanent injunction as alleged in the first cause of action, such a matter is not ripe for review as it would address a purely hypothetical situation not involving an actual controversy and our resolution of the matter would constitute an advisory or hypothetical opinion. (See generally *Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 170-171 [discussing the ripeness requirement for justiciability].)

Defendants rely on *National Assn. of Wine Bottlers v. Paul* (1969) 268 Cal.App.2d 741 (*Wine Bottlers*) in contending the underlying matter is moot. In *Wine Bottlers,* due to a record-breaking crop and record-breaking production, the market for dessert wine did not match mounting surpluses. (*Id*. at p. 743.) The Director of Agriculture (the Director) issued a marketing order which, essentially, prohibited as an unfair trade practice the sale of dessert wine at less than cost. (*Id*. at p. 744.) The plaintiffs, an association of wine bottlers and member corporations, sought and obtained injunctive relief. (*Id*. at pp. 744-745.) The Director applied for a writ of supersedeas, which the Court of Appeal denied, but the California Supreme Court granted, and the matter was transferred back to the Court of Appeal. (*Id*. at p. 745.) However, by the time the Court of Appeal considered the appeal, the Director had issued a directive terminating the subject marketing order and supplemental orders. (*Ibid*.) The Court of Appeal determined that, under the circumstances, the appeal was rendered moot. (*Id*. at pp. 745-746.)

In concluding the matter was moot, the *Wine Bottlers* court wrote: "It is well settled that the duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it [citation]. [¶] Since the . . . order on which this case is based is no longer in effect, a decision of this court obviously cannot affect it. The parties desire the opinion of this court as to the power of the

16

Director to prohibit sales of bulk grape products below actual cost in a subsequent order. But, an actual controversy does not exist at present and since the injunction did not specifically enjoin the Director from prohibiting sales below actual cost, an opinion on this issue would be no more than dicta. [¶] It is believed that the facts here are within the general rule that the judicial function is the determination of actual controversies between parties and the court may not concern itself with settling abstract questions of law which may never be involved in an actual dispute regarding property or other rights. [Citation.] Although a case may originally present an existing issue (as here), if before decision is reached, it has, through acts of the parties or other cause, lost that existent character, it is rendered moot and may not be considered." (*Wine Bottlers*, *supra*, 268 Cal.App.2d at p. 746.) Our case is similar to *Wine Bottlers*; the injunctive relief sought here can no longer afford any form of effective relief.

In the second cause of action, CESAR sought a declaration that the Governor's suspension of CEQA with respect to the project, and the Department's approval of the project based on the EO, violated the public trust doctrine. With regard to declaratory relief, Code of Civil Procedure section 1060 requires that the person seeking declaratory relief be involved in a "case[] of actual controversy relating to the legal rights and duties of the respective parties . . . ."[5] "It would be an idle action on the part of a trial court to

---

[5] Code of Civil Procedure section 1060 reads: "Any person interested under a written instrument, excluding a will or a trust, or under a contract, or who desires a declaration of his or her rights or duties with respect to another, or in respect to, in, over or upon property, or with respect to the location of the natural channel of a watercourse, may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action or cross-complaint in the superior court for a declaration of his or her rights and duties in the premises, including a determination of any question of construction or validity arising under the instrument or contract. He or she may ask for a declaration of rights or duties, either alone or with other relief; and the court may make a binding declaration of these rights or duties, whether or not further relief is or could be claimed at the time. The declaration may be either affirmative or negative in form and

17

make a declaration of the rights and duties of the parties where the controversy is or has become moot and no actual controversy exists relating to their legal rights and duties." (*Pittenger v. Home Savings & Loan Assn. of Los Angeles* (1958) 166 Cal.App.2d 32, 36.) "An action for declaratory relief should be dismissed where it appears that no justiciable controversy exists." (*Ibid*.)  This principle applies here.

CESAR's appeal has been rendered moot.  The occurrence of events—the removal of the salinity barrier—renders it impossible for this court to grant CESAR any effective relief in connection with its first amended petition and verified complaint.  (See generally *Cucamongans, supra*, 82 Cal.App.4th at p. 479; *Eye Dog Foundation, supra*, 67 Cal.2d at p. 541.)

### 2.  Mootness Exceptions

There are three discretionary exceptions to the mootness doctrine.  These exceptions are:  "(1) when the case presents an issue of broad public interest that is likely to recur [citation]; (2) when there may be a recurrence of the controversy between the parties [citation]; and (3) when a material question remains for the court's determination."  (*Cucamongans, supra*, 82 Cal.App.4th at pp. 479-480.)

"[I]f a pending case poses an issue of broad public interest that is likely to recur, the court may exercise an inherent discretion to resolve that issue even though an event occurring during its pendency would normally render the matter moot."  (*In re William M.* (1970) 3 Cal.3d 16, 23.)

Defendants rely on *Wine Bottlers*, *supra*, 268 Cal.App.2d 741, where the court concluded the likelihood of the recurrence of the circumstances which gave rise to the alleged issue of public interest was speculative, to demonstrate that this exception does not apply here.  The *Wine Bottlers* court stated:  "While recognizing the magnitude and

---

effect, and the declaration shall have the force of a final judgment.  The declaration may be had before there has been any breach of the obligation in respect to which said declaration is sought."

importance of the wine industry in California, the issuance of the market order here, only applicable to processors of bulk dessert wine products, is not affected with the same type of interest to the public as is presented in the cases relied upon by appellant. In the cited cases there was great certainty that the matters before the courts would be presented again and the public interest involved was of immediate concern to individuals not directly involved in the pending proceeding. [¶] In the present case, it is highly speculative whether the issue will come up again. First, there must be a year where overproduction produces a chaotic market. Second, the Director must decide to meet the situation by enacting just such another order which is extremely doubtful now that the features objectionable to the parties have been presented and litigated to this point. Third, the required number of processors must assent to the order." (*Id*. at p. 747.) Thus, finding this exception inapplicable, the Court of Appeal reversed the judgment and remanded the matter, directing the trial court to dismiss the action as moot. (*Id*. at pp. 747-748.)

The issue presented here—the Department's approval and installation of a salinity barrier, without CEQA review, to forestall saltwater intrusion and limit the resulting impact on drinking water weighed against the impacts of the barrier on the environment— certainly presents an issue of relevance to the public. However, as in *Wine Bottlers*, here, the question of whether the circumstances giving rise to this action will arise again is highly speculative. While it appears scientifically likely that California will face severe droughts in the future, it is wholly unknown whether the Department will seek to prevent greater saltwater intrusion in the Delta and whether it will choose to do so by the installation of a salinity barrier at a given location. Further, it is wholly unknown whether the Governor will declare a state of emergency based on severe drought (although this would seem likely), and, of greater relevance here, whether the Governor will suspend CEQA for purposes of the installation of one or more salinity barriers. In short, while the issue presented here is of public interest, it takes a measure of speculation

19

to conclude the specific issue here will recur.  Consequently, we decline to exercise our discretion to address the merits under this exception.

We are aware that "[a]ppellate courts have shown a particular willingness to exercise such discretion when an issue is otherwise likely to evade appellate review due to its inherently temporary nature." (*In re Kerry K.* (2006) 139 Cal.App.4th 1, 4.)  This court has recognized that "[m]any formulations of the public interest exception to the mootness doctrine include the phrase 'may evade review' [citation] or 'yet evade review,' " [citation] and "[t]hat a controversy may be so short lived as to evade normal appellate review is a strong reason to decide an issue although it is technically moot." (*In re Schuster* (2019) 42 Cal.App.5th 943, 952.)  As noted, this case does address matters of public interest.  Moreover, the temporary nature of the emergency condition here and the legal questions underlying the Governor's authority to meet any such emergency conditions, including the suspension of CEQA and the scope of the public trust doctrine, would suggest these underlying legal issues will evade normal appellate review in the future.  But here, having failed to reply to defendants' mootness argument, plaintiffs have not attempted to persuade this court that the public interest exception applies and thus we decline to exercise our discretion to apply the exception and reach the merits.  (See *Parkford Owners, supra,* 54 Cal.App.5th at p. 725 [declining to apply the public interest exception, noting "having failed to brief the mootness issue in this appeal, [plaintiff] has not even attempted to persuade this court that any of the issues raised in this appeal are not moot"].)  We arrive at the same conclusion as to the other two mootness exceptions.

### III.  Conclusion

As we have stated *ante*, we conclude that CESAR's appeal has been rendered moot.  We further conclude, in the exercise of our discretion, that none of the three exceptions to the mootness doctrine should be applied to the circumstances of this case.  Accordingly, we decline to consider the merits of this appeal based on an exception to the

20

mootness doctrine.  We shall dismiss the appeal as moot.  In light of our determination, we shall not address the parties' remaining contentions.

## DISPOSITION

The appeal is dismissed as moot.  Defendants are awarded their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)


/s/
MURRAY, J.

We concur:


/s/
ROBIE, Acting P. J.


/s/
HOCH, J.