Filed 9/30/24  Sayyedalhosseini v. Rostami CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| SONIA SAYYEDALHOSSEINI, | C097939 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2022-70011827-CU-HR-GDS) |
| v. | |
| ROSTAM ROSTAMI, | |
| Defendant and Respondent. | |
| SONIA SAYYEDALHOSSEINI, | C097940 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2022-70011828-CU-HR-GDS) |
| v. | |
| FARIBA FARINFAR, | |
| Defendant and Respondent. | |

1

This consolidated appeal arises out of a contentious and long-running dispute among neighbors living in the same apartment complex in Folsom.  Plaintiff Sonia Sayyedalhosseini (Sonia), proceeding as a self-represented litigant, challenges the orders denying her petitions for a civil harassment restraining order against defendants Rostam Rostami (Rostam) and Fariba Farinfar (Fariba) under Code of Civil Procedure section 527.6.[1]  Finding no error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

We briefly summarize the pertinent facts and procedure.

*The Parties*

Sonia and her husband (Seyed)[2] are originally from Iran.  At all relevant times, they lived in an apartment complex in Folsom.

Rostam and Fariba (husband and wife) are also originally from Iran.  They lived in the same apartment complex as Sonia and Seyed.  Rostam and Fariba were the "front door neighbor[s]" of Sonia and Seyed.  Their apartment was across the hall on the second floor of the apartment building.

*Prior Petitions for a Civil Harassment Restraining Order*

In October 2020, Sonia and Seyed obtained four temporary civil harassment restraining orders against Rostam and Fariba, in four separate cases.  These restraining orders were based on allegations that Rostam and Fariba had threatened (on several occasions) to kill Sonia and Seyed with a gun and knife.

Two months later, in December 2020, Sonia and Seyed filed petitions for a civil harassment restraining order against a former friend of theirs, Hengameh Hatami (Hengameh), who was also originally from Iran and lived in Folsom.  In February 2021,

---

[1]  Undesignated statutory references are to the Code of Civil Procedure.

[2]  Seyed's full name is Seyed Saeid, Zamanieh Shahri.

Sonia and Seyed filed additional petitions for a civil harassment restraining order against Hengameh. The allegations in support of those petitions are summarized in an unpublished opinion issued by this court in April 2023. (See *Z.S. v. H.H.* (Apr. 27, 2023, C094845, C094846, C094847, C094848) [nonpub opn.] 2023 Cal. App. Unpub. Lexis 2485.)[3] Among other things, Sonia and Seyed alleged that Hengameh wanted to kill them after their friendship had broken down due to a series of events they described as "shameful,"[4] and that Hengameh provoked the "Rostami family" to threaten to kill them with a gun and knife. (*Id.* at p. *2.) In July 2021, the trial court granted the petitions and issued civil harassment restraining orders against Hengameh. (*Id.* at p. *9.)

*Mediation Agreement*

Meanwhile, in March 2021, the parties entered into a mediation agreement. As part of that agreement, Sonia and Seyed agreed to dismiss their petitions for civil harassment restraining orders against Rostam and Fariba and to pay them attorney fees and costs in the amount of $2,300. For their part, Rostam and Fariba agreed to "waive malicious prosecution against Seyed and Sonia" for all incidents arising prior to the date

---

[3] On the court's own motion, we take judicial notice of our prior unpublished opinion. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

[4] With respect to the so-called "shameful" incidents, Sonia and Seyed explained as follows: "[W]hen [Sonia] was waiting for [Seyed's] immigration visa, [Hengameh] told her that she should divorce [Seyed] and marry someone who needed a green card and would pay her money. They also stated [Hengameh] told [Seyed] she wanted to be his girlfriend, and they could keep the relationship quiet. Finally, they stated [Hengameh] paid $165 for [Seyed's] green card fee but charged [Seyed] $16,500. As a result of these incidents, [Seyed] and [Sonia] stated they cut communications with [Hengameh] in May 2016, and '[s]ince that time she started accusations to us in Iranian community to discredit us.' The Iranian community, however, did not believe [Hengameh], they reported [Hengameh's] accusations to [Seyed] and [Sonia], and the community cut off communications with [Hengameh], 'and we think this situation led to [Hengameh] become overwhelmed and provoked Rostami family to threaten to kill us.' " (*Z.S. v. H.H.*, *supra*, 2023 Cal. App. Unpub. Lexis at pp. *3-*4.)

3

of the agreement.  The parties also agreed to (among other things) stay away from each other and to have no contact.

*Current Petitions for a Civil Harassment Restraining Order*

In November 2022, Sonia filed separate (but substantively identical) petitions for a civil harassment restraining order against Rostam and Fariba, claiming that they had violated the terms of the mediation agreement.  In support of her petitions, Sonia explained that Rostam and Fariba were her "front door neighbor" and that they "came behind their window" and displayed a "big knife" to her and Seyed and threatened to cut their "neck[s] from ear to ear."  Sonia further explained that this "life threatening incident" occurred after one of her neighbors called the police and falsely reported that there was shouting and screaming coming from her apartment.  According to Sonia, this "fabricated report" was an example of the "Rostami family and their circle's accusations to harass and assault" her and Seyed in retaliation for the filing of the prior petitions for a civil harassment restraining order.

In an attachment to her petitions, Sonia explained that she and Seyed immediately went to the police department following the "false, fake, and fabricated" report.  Sonia further explained:  "When [Seyed and I] came back from the Folsom Police Department to our property, after we parked our car and we wanted to go upstairs, Rostam Rostami and his wife, Fariba Farina, who are our front door neighbor, came behind their window and showed us big knife and threatened us to cut our neck from ear to ear."

As part of her petitions, Sonia described other purported instances of harassment that (in her view) violated the terms of the mediation agreement.  These incidents (which were reported to the police) included Rostam giving Sonia a suspicious letter that was not addressed to either her or Seyed, Rostam ripping the sender's address off a package

4

belonging to Sonia,[5] and the "Rostami family" calling the police and falsely claiming that Sonia and Seyed took a picture of them. Sonia's petitions sought protection for herself and Seyed from both Rostam and Fariba.

After the trial court granted Sonia's requests for temporary restraining orders and scheduled a hearing regarding the issuance of permanent restraining orders, Rostam and Fariba filed separate (but substantively identical) responses to Sonia's petitions. They denied the allegations of harassment and asked for an award of attorney fees and costs. According to Rostam and Fariba, Sonia's allegations of harassment were fabricated, including the allegations she made in her prior (i.e., October 2020) petitions for a civil harassment restraining order.

*The Hearing and Challenged Ruling*

In January 2023, a hearing was held on both of Sonia's petitions. During the hearing (and after the parties were sworn), the trial court asked Sonia if there was any direct evidence other than her declaration that she wanted to submit in support of her allegation that Rostam and Fariba "came behind the[ir] window" and showed her a big knife and threatened to cut her throat. Thereafter, the following exchange occurred:

"[SONIA]: When . . . [Seyed and I] were coming back from the police department to our house, Rostami and his wife came behind the window and showed me a big knife and said that we gonna cut your throat from your ear to ear.

"THE COURT: Okay. How far away was that, and what window are you talking about?

"[SONIA]: They live right across from me, so I can see them.

_____

[5] In connection with this allegation, Sonia explained: "Recently, someone threatened our family in Iran in their residential address which was mentioned on the package that Rostami ripped it off. They threatened our family that [Seyed] and Sonia will be killed in their apartment because they changed their religion from Islam to Christianity."

"THE COURT: How far away is it?

"[SONIA]: Five feet. Five feet.

"THE COURT: And they were behind their window?

"[SONIA]: Well, no. Yes, it was behind their own window, but I could see them clear.

"THE COURT:· Okay. Is there anything else you wanted to add just on that issue?

"[SONIA]: I have a witness regarding all this incident, and her name is Judge Debra Lobre.

"THE COURT: Thanks. Is there anything else? Judge Lobre was not a witness.

"[SONIA]: Exhibit 28, 29, 30.

"THE COURT:· Okay. Thank you. Thank you, then that's enough."

When asked, both Rostam and Fariba denied threatening Sonia with a knife. Rostam also testified that his apartment did not have a window facing Sonia's apartment, explaining that the windows of the parties' respective apartments faced the parking lot. In response, Sonia accused Rostam of "lying," but did not present any evidence contradicting his contention about the windows or any direct evidence corroborating her allegations about the knife and threat of harm.

In denying the petitions, the trial court found that Sonia had "failed to prove her case by clear and convincing evidence." The court awarded attorney fees in favor of Rostam and Fariba in the aggregate amount of $1,000, consisting of an award of $500 in each case. Thereafter, Sonia indicated that she had "objections," but the court told her "the case [was] over" and the hearing concluded without further discussion.

*Appeals and Consolidation Order*

Sonia filed a timely notice of appeal in both cases. In March 2023, we issued an order consolidating the cases on appeal for all purposes, including hearing and decision.

## DISCUSSION

### I

### *Petitions for a Civil Harassment Restraining Order*

Sonia argues the trial court erred by denying her petitions for a civil harassment restraining order. She claims the trial court erroneously refused to "accept" (i.e., admit) relevant evidence, and did not provide her the opportunity to "state the evidence" at the hearing on the petitions. According to Sonia, "the evidence which was neither allowed to be stated nor admitted" was sufficient to support the issuance of civil harassment restraining orders. As we next explain, we see no basis for reversal.

A. *Applicable Legal Principles and Standard of Review*

"The Legislature enacted section 527.6 in 1978 in order 'to protect the individual's right to pursue safety, happiness and privacy as guaranteed by the California Constitution.' [Citations.] The provision was intended to ' "establish an expedited procedure for enjoining acts of 'harassment' " ' in order ' "to provide quick relief to harassed persons." ' " (*Olson v. Doe* (2022) 12 Cal.5th 669, 677.) "The quick, injunctive relief provided by section 527.6 'lies only to prevent threatened injury'—that is, future wrongs. [Citation.] The injunctive relief is not intended to punish the restrained party for past acts of harassment." (*Yost v. Forestiere* (2020) 51 Cal.App.5th 509, 520 (*Yost*); see *Olson*, at p. 673 ["section 527.6 provides a specialized procedure for a petitioner who has suffered harassment within the meaning of the statute to expeditiously seek a limited judicial remedy — injunctive relief to prevent threatened future harm"].) After finding harassment, upon a showing of good cause, the court may include named family or household members in the restraining order. (§ 527.6, subd. (c).)

"To provide quick relief, '[a] request for the issuance of a temporary restraining order without notice under this section shall be granted or denied on the same day that the petition is submitted to the court.' [Citation.] If a request is submitted too late in the day for effective review, the temporary restraining order must be granted or denied the next

business day.  [Citation.]  Subject to the provisions governing continuances, a hearing on the petition shall be held '[w]ithin 21 days, or, if good cause appears to the court, 25 days from the date that a petition for a temporary order is granted or denied.' "  (*Yost, supra,* 51 Cal.App.5th at pp. 520-521.)  "The respondent may file a response that explains, excuses, justifies, or denies the alleged harassment, or may file a cross-petition under this section."  (§ 527.6, subd. (h.)

" 'Harassment' " is defined as "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose.  The course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner."  (§ 527.6, subd. (b)(3).)  " 'Course of conduct' " is defined as "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including following or stalking an individual, making harassing telephone calls to an individual, or sending harassing correspondence to an individual by any means, including, but not limited to, the use of public or private mails, interoffice mail, facsimile, or email.  Constitutionally protected activity is not included within the meaning of 'course of conduct.' "  (§ 527.6, subd. (b)(1).)

A person who has suffered harassment as defined by section 527.6 may "seek a temporary restraining order and an order after hearing prohibiting harassment."  (§ 527.6, subd. (a)(1).)  "At the hearing, the judge shall receive any testimony that is relevant, and may make an independent inquiry."  (§ 527.6, subd. (i).)  "This provision has been interpreted to mean hearsay evidence, such as a declaration or police report, is admissible during hearings conducted pursuant to section 527.6. [Citations.]  Under this less formal approach to the admission of evidence, '[b]oth sides may offer evidence by deposition, affidavit, or oral testimony, and the court shall receive such evidence, subject only to such reasonable limitations as are necessary to conserve the expeditious nature of the

8

harassment procedure set forth by . . . section 527.6.' " (*Yost*, *supra*, 51 Cal.App.5th at p. 521.)

"If the judge finds by clear and convincing evidence that unlawful harassment exists, an order shall issue prohibiting the harassment." (§ 527.6, subd. (i).) "Clear and convincing" evidence requires a finding of "high probability." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 998 [where clear and convincing proof is required, the proponent must convince the trier of fact that it is "*highly probable* that the facts which he asserts are true"].)

" 'In the case where the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals, it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment. . . . [¶] Thus, where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." [Citation.]' [Citation.] The appellate court cannot substitute its factual determinations for those of the trial court; it must view all factual matters most favorably to the prevailing party and in support of the judgment. [Citation.] ' "All conflicts, therefore, must be resolved in favor of the respondent." ' " (*Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838.)

B. *Analysis*

Sonia argues reversal is required because the evidence which the trial court "wrongly refused" to admit was sufficient to support the issuance of civil harassment restraining orders against Rostam and Fariba. We are unpersuaded. Initially, we note that Sonia's appellate briefing fails to identify what specific evidence the trial court

9

erroneously refused to admit. Further, while Sonia asserts the trial court did not give her "permission" or an opportunity to "state the evidence," the record belies that assertion. At the hearing on the petitions, Sonia was given the opportunity to testify and introduce direct evidence regarding the incident giving rise to her petitions. And the evidence in the record does not compel a finding in favor of Sonia as a matter of law. Sonia's evidence was not uncontradicted and unimpeached. Nor was it of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding of harassment. The record reflects that Rostam and Fariba unequivocally denied Sonia's allegations of harassment, including at the hearing on Sonia's petitions. Further, there was evidence that the parties' respective apartments were on the second floor of the apartment building and did not have windows facing each other. For her part, Sonia did not offer any evidence (either at the hearing or in connection with her post-hearing briefing) showing that the apartments did, in fact, have windows facing each other. Nor did Sonia offer any evidence from a third-party witness corroborating her allegations regarding the display of a knife and threat of harm. And it is unclear from the evidence Sonia presented as to how she was able to see and hear Rostam and Fariba during the purported incident in question. In short, on the record before us, we cannot conclude that the trial court erred in denying Sonia's petitions for a civil harassment restraining order.

We find no merit in Sonia's suggestion that the trial court was required to credit her evidence regarding the "life threatening" incident, which primarily consisted of her sworn statements. Because Rostam and Fariba offered evidence contradicting those statements, the underlying cases were essentially a credibility contest. It is apparent that the court resolved that credibility issue against Sonia, and there is no basis to disturb that determination on appeal. (See *Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 334 [questions as to the credibility of witnesses are matters for the trial court to resolve].) "Venerable precedent holds that, in a bench trial, the trial court is the 'sole

10

judge' of witness credibility. . . . The fact finder's determination of the veracity of a witness is final." (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 582.) This is because "[f]act finders see and hear witnesses. The finder of the facts has a view appellate courts lack. That view is better." (*Ibid.*)

## II

### *Request for Statement of Decision*

We reject Sonia's suggestion that reversal is required because the trial court failed to issue a statement of decision in response to her request. Sonia cites no authority requiring a court to issue a statement of decision under the circumstances presented. The only authority Sonia relies upon to support her argument is section 632, which provides, in pertinent part: "The court shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial upon the request of any party appearing at the trial. The request must be made within 10 days after the court announces a tentative decision *unless the trial is concluded within one calendar day or in less than eight hours over more than one day in which event the request must be made prior to the submission of the matter for decision*." (§ 632, italics added.)

Even were we to assume that section 632 requires a trial court to issue a statement of decision in a civil harassment case if a timely request is made, Sonia's request was not timely. The hearing on Sonia's petitions for a civil harassment restraining order was held on January 27, 2023. At the end of the hearing, the court denied the petitions. Because the hearing/trial was concluded within one calendar day, a request for a statement of decision had to be made prior to the end of the hearing. Sonia did not request a statement of decision until January 30. Because Sonia's request was untimely, she cannot claim the failure to issue a statement of decision was error. (See *Khan v. Medical Board* (1993) 12 Cal.App.4th 1834, 1840.)

11

III

*Request for Sanctions on Appeal*

In their respective respondent's briefs, Rostam and Fariba request (without elaboration) that we impose monetary sanctions on Sonia. In support of their requests, they cite section 907, which provides: "When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just." Although Rostam and Fariba both note in their briefing that they "reserve" the right to file a separately noticed motion for sanctions pursuant to rule 8.276 of the California Rules of Court,[6] neither did so.

We decline to consider imposing monetary sanctions against Sonia. The requests for sanctions are procedurally defective because they fail to comply with rule 8.276, which requires the filing of a separate noticed motion with accompanying declaration supporting the amount of the sanction being sought, filed no later than 10 days after the deadline for the filing of the reply brief. Given the lack of compliance with rule 8.276, we deny the requests for sanctions. (See *Saltonstall v. City of Sacramento* (2014) 231 Cal.App.4th 837, 858-859; *Cowan v. Krayzman* (2011) 196 Cal.App.4th 907, 919.)

---

[6] Further rule references are to the California Rules of Court.

## DISPOSITION

The orders denying Sonia's petitions for a civil harassment restraining order are affirmed. Rostam's and Fariba's requests for monetary sanctions are denied. Rostam and Fariba shall recover their costs on appeal. (Rule 8.278(a).)

                                                                      _____/s/_____
                                                                   Duarte, J.

We concur:

_____/s/_____
Robie, Acting P. J.

_____/s/_____
Mauro, J.

13